J-A26024-18

2018 PA Super 352

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
                             :
              v.             :
                             :
                             :
EDWARD LOWE BAKER, JR.       :
                             :
         Appellant           :  No. 221 WDA 2018

Appeal from the Judgment of Sentence April 24, 2017
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0001284-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY SHOGAN, J.:                    **FILED DECEMBER 24, 2018**

Edward Lowe Baker, Jr. ("Appellant") appeals from the judgment of

sentence imposed after a jury convicted him of first-, second-, and third-

degree murder, rape by forcible compulsion, burglary, and criminal trespass.[1]

We affirm.

We summarize the facts of record as follows.  Appellant's former

girlfriend, Addaleigh Huzyak ("the Victim") ended their six-month relationship

in late May of 2016.  N.T., 3/31/17, at 164–165, 182.  Late in the evening on

June 5, 2016, Appellant entered the Victim's apartment and waited for her to

come home from her shift at work, which ended at 11:00 p.m.  *Id.* at 201–

205.  When the Victim arrived home, she was annoyed to see Appellant and

_____

[1]  18 Pa.C.S. §§ 2502(a–c), 3121(a)(1), 3502(a)(2), and 3503(a)(1)(i),
respectively.

said she was going to call for help. *Id.* at 205–207. Appellant shot her in the face to disable her, slit her throat twice, fatally shot her in the back of the head, and then had sexual intercourse with her. *Id.* at 207–209 and Commonwealth Exhibit 1 (Appellant's videotaped statement). Appellant escaped through a window. *Id.* at 211.

Authorities apprehended Appellant in Winchester, Kentucky, on June 7, 2016. Pennsylvania State Troopers Jason Domenick and Christopher Birckbichler proceeded to Winchester that day and interviewed Appellant in the Winchester Police Station. N.T. Suppression, 10/21/16, at 9–17. Prior to the interview, Trooper Birckbichler discussed with Appellant his *Miranda*[2] rights, and Appellant completed a waiver form. *Id.* at 21–23, Commonwealth Exhibits 1, 2. During the interview, Appellant confessed to killing the Victim. *Id.* at Commonwealth Exhibit 1. Appellant was extradited to Pennsylvania the next day. *Id.* at 36. Prior to trial, Appellant filed a motion to suppress his confession and a petition for writ of *habeas corpus*, which the trial court denied. Omnibus Pretrial Motion, 9/21/16, at II, III; Order, 10/25/16.

Following his trial and conviction, the trial court sentenced Appellant to life imprisonment on the first-degree murder conviction and a consecutive ten to twenty years of incarceration on the rape by forcible compulsion conviction. Order, 4/27/17. No further penalty was imposed on the remaining

---

[2] *Miranda v. Arizona*, 384 US 436 (1966).

convictions. Appellant filed post-sentence motions, which the trial court denied. Motion for Post-Sentence Relief, 5/4/17; Supplemental Motion for Post-Sentence Relief, 11/3/17; Order, 1/19/18. This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our consideration:

I. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that Appellant, Edward Lower Baker, Jr., was guilty of Murder of the First Degree, Rape By Forcible Compulsion, Burglary, and Criminal Trespass?

II. Was the jury verdict of guilty against the weight of the evidence presented at trial?

III. Whether the Trial Court erred in denying Appellant's Motion to Suppress?

Appellant's Brief at 5.

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions of first-degree murder, rape by forcible compulsion, burglary, and criminal trespass. Appellant's Brief at 14–17. Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Sanchez*, 36 A.3d 24, 37 (Pa. 2011). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth*

*v. Von Evans*, 163 A.3d 980, 983 (Pa. Super. 2017). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Mucci*, 143 A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

Appellant first challenges the sufficiency of the evidence supporting his conviction of first-degree murder. An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. *Commonwealth v. Ballard*, 80 A.3d 380, 390 (Pa. 2013). A jury may infer the intent to kill "based on the accused's

use of a deadly weapon on a vital part of the victim's body." *Sanchez*, 36 A.3d at 37.

Appellant argues:  "When considering that the Appellant readily conceded at trial that he shot and ultimately killed [the Victim], the question for the jury was whether the acts committed constituted First-Degree Murder. The record is not able to establish all the requisite elements for First-Degree Murder, as the Appellant lacked the malice required for such a finding." Appellant's Brief at 14.  We rely on the trial court's rejection of Appellant's claim that he lacked malice, as set forth in its Pa.R.A.P. 1925(a) opinion:

> In support of establishing the requisite intent, the Commonwealth presented and the jury heard ample evidence indicating that [Appellant] planned to murder the [V]ictim.  For example, the Commonwealth presented a series of text and Facebook messages sent shortly after an argument between [Appellant] and the [V]ictim in which [Appellant] was attempting to acquire a firearm.  The jury heard testimony and viewed evidence of [Appellant's] research prior to the murder regarding extradition and Google searches inquiring "How to Knock Someone Out Fast" approximately one hour before the murder. The jury saw photos of the [V]ictim's window—the very window [Appellant] used as an exit after the crime—snapped from [Appellant's] cell phone shortly before the murder.  This evidence alone, although not exhaustive,[3] clearly is sufficient to enable a jury to find intentional premeditation.  As to the finding of guilt of Murder of the First Degree, the jury was also presented with a

---

[3] By his own admission, Appellant took photographs of the Victim's apartment days before the homicide and conducted online research about countries that do not have extradition treaties with the United States.  Four days before the homicide, Appellant obtained a gun.  On the day of the homicide, Appellant parked his vehicle at a distance from the Victim's residence to avoid detection. He gained access to the Victim's apartment without her permission while she was at work.  He waited in the apartment, armed with a loaded gun.  N.T., 3/31/17, at 185, 190–191, 193, 199–205, and Commonwealth Exhibit 1.

recorded statement from [Appellant] claiming that he first shot the [V]ictim to debilitate her, slit her throat two times, and then shot her a second time, resulting in death.

Trial Court Opinion, 4/2/18, at 3–4.

We have reviewed the record, including the complete notes of trial testimony. The evidence presented and the inference drawn from Appellant's use of a deadly weapon on vital parts of the Victim's body support the first-degree murder conviction. Appellant's first sufficiency claim lacks merit.

Next, Appellant challenges the sufficiency of the evidence supporting his conviction of rape by forcible compulsion. Appellant's Brief at 14–15. The Pennsylvania Crimes Code defines rape, in relevant part, as follows:

> **(a) Offense defined.**—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> (1) By forcible compulsion.

18 Pa.C.S. § 3121(a)(1). "Forcible compulsion" is "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse." 18 Pa.C.S. § 3101.

According to Appellant, "[t]he fact that the [Victim] was deceased at the time the intercourse occurred made it impossible for the Appellant to commit the crime of Rape. Due to same, the record is unable to establish the requisite

elements for Rape by Forcible Compulsion." Appellant's Brief at 15. In response, the Commonwealth explains:

> Appellant . . . admitted to having sex with the Victim after he shot her in the head for the second time. Dr. Lukasevic testified that the Victim could have died within minutes, but possibly up to an hour after Appellant administered the final shot. There is no way for the Commonwealth to pinpoint with absolute certainty whether the Victim was alive at the time of penetration. The [rape by forcible compulsion] statute clearly contemplates this exact situation—where it is virtually impossible for the Commonwealth to show whether the [V]ictim was alive, dying, or dead at the time of the sexual act. Because . . . the statute does not require the Commonwealth to prove sex occurred prior to a victim's death, the evidence was sufficient to find Appellant guilty of that crime.

Commonwealth's Brief at 13–14 (internal citations omitted).

We rely again on the trial court's rejection of Appellant's claim, as set forth in its memorandum disposing of Appellant's *habeas corpus* petition:

> With respect to the Rape by Forcible Compulsion charge, [Appellant] argued that the Commonwealth failed to present evidence that the alleged penetration occurred while the victim was alive, and that penetration after a victim's death is not within the definition of rape. *See Com. v. Sudler*, 436 A.2d 1376 (Pa. 1981). However, while the *Sudler* case has not been overturned, Legislative amendments since the case was decided have made the decision inoperative. Specifically, in 1995 the Legislature amended Section 3101 to include a definition for forcible compulsion:
>
> > Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.
>
> 18 Pa. C.S. § 3101. Thus, the statutory language makes clear that the time of [the V]ictim's death is not dispositive in the

outcome of the charge. Furthermore, whether the alleged penetration occurred before or after the [V]ictim's death, or at all, is a question of fact for the fact-finder to determine at trial. There is sufficient evidence to establish that the Commonwealth met its burden on the Rape charge . . . .

Trial Court Memorandum Opinion and Order, 10/25/16, at unnumbered 4.

We have reviewed the certified record and relevant legal authority. The evidence presented and the statutory language support the conviction of rape by forcible compulsion. Thus, Appellant's second sufficiency claim lacks merit.

Appellant's third sufficiency challenge is to the evidence supporting his burglary conviction. Appellant's Brief 15. "Burglary is defined as the act of entering or occupying a structure with intent to commit a crime therein." *Commonwealth v. Magnum*, 654 A.2d 1146, 1147 (Pa. Super. 1995); 18 Pa.C.S. § 3502(a)(2). A "totality of the circumstances" approach is used where "[t]he Commonwealth must establish, as part of its evidentiary burden, additional evidence that goes beyond the mere breaking in of a door or window." *Commonwealth v. Wilamowski*, 633 A.2d 141, 144 (Pa. 1993).

According to Appellant, "the record does not demonstrate that Appellant had formed the intent to commit a crime in [the Victim's] apartment at the time he entered the structure." Appellant's Brief at 16. The Commonwealth counters that, viewing the evidence in the light most favorable to it, "Appellant entered an occupied structure at the same time as he possessed the intent to kill the Victim." Commonwealth's Brief at 12. We agree with the Commonwealth.

More than one week before the homicide, the Victim ended her relationship with Appellant. N.T., 3/31/17, at 182. Four days before the homicide, Appellant purchased a Jennings .22 caliber handgun, which was consistent with the shell casings recovered at the homicide scene. *Id.* at 190–191, 193; N.T. 3/28/17, at 49–52 and Commonwealth's Exhibit 56a. On the night of the homicide, Appellant parked his vehicle away from the Victim's apartment building to avoid detection. N.T., 3/31/17, at 203. Using his copy of the Victim's apartment key, Appellant entered the victim's apartment, armed with a loaded gun, when the Victim was not at home, and without her permission. *Id.* at 167, 172, 185, 202, 204. While waiting for the Victim to return home, Appellant conducted web searches on how to knock a person unconscious and kill them. *Id.* at Commonwealth Exhibit 1.

Viewing this circumstantial evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence was sufficient to establish beyond a reasonable doubt that Appellant entered the Victim's apartment with an intent to commit a crime therein, *i.e.*, homicide. Appellant's third sufficiency challenge lacks merit.

Appellant's final sufficiency challenge is to the evidence supporting his conviction for criminal trespass. Appellant's Brief at 17. Criminal trespass is defined, in relevant part, as follows:

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

> (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

18 Pa.C.S. § 3503(a)(1)(i).

Appellant argues: "Fatal to the verdict is that the landlord had sent the Appellant a letter detailing the passcode for access to the building. Due to same, Appellant lacked the requisite intent to support a conviction for Criminal Trespass, as he did not know he was not licensed or privileged to enter the structure." Appellant's Brief at 17 (internal citation omitted).

We reject Appellant's final sufficiency challenge as disingenuous. In reaching this conclusion, we rely on the trial court's analysis:

> The Commonwealth presented and the jury heard evidence that [Appellant] was explicitly told by the sole leaseholder/victim several times not to be present on the property. Further, [Appellant] testified that he knew the leaseholder did not want him to return to the property and that he was unwelcome.[4] While it is true that [Appellant] had previously been given a key and received direct correspondence from the property owner in the past, both change in circumstances and the subsequent unambiguous communication from the leaseholder establishes sufficient evidence for a jury to reasonably find [Appellant] knew he was not welcome on the property.

Trial Court Opinion, 4/2/18, at 6–7.

We have reviewed the certified record, including the notes of testimony. Appellant admitted that he did not have permission to be in the Victim's

---

[4] N.T., 3/31/17, at 185.

apartment. N.T., 3/31/17, at 185, 204. Appellant's final sufficiency challenge lacks merit.

In his second issue, Appellant assails the jury's verdict as against the weight of the evidence. Appellant's Brief at 17. "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015). We use the following standards in addressing a weight challenge:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751–[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319–[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> **Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented,

- 11 -

> an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976).
>
> ***Widmer***, 560 Pa. at 321–[3]22, 744 A.2d at 753 (emphasis added).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–1055 (Pa. 2013). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–880 (Pa. 2008).

In a single, boilerplate sentence, Appellant contends that "the evidence is this case weighs heavily against the verdict reached by the jury, and as such shocks one's sense of justice." Appellant's Brief at 18. This argument fails to defeat the trial court's exercise of discretion in ruling that the verdict was not against the weight of the evidence. As the trial court observed:

> during deliberations, the jury had the opportunity to weigh the credibility of all witnesses[, including Appellant,] and evidence presented at trial and determined which evidence it found most compelling. The jury, serving as the fact-finder, had ample evidence to find [Appellant] guilty of [the offenses charged], and furthermore, found this evidence credible. In this case, a guilty verdict certainly does not shock one's sense of justice.

Trial Court Opinion, 4/2/18, at 4. The jury chose to believe the evidence presented by the Commonwealth, as was its right. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015). This Court will not assume

the role of fact-finder and reweigh the evidence. **Rogal**, 120 A.3d at 1001 (citation omitted). Appellant's weight challenge lacks merit.

Lastly, Appellant challenges the denial of his motion to suppress his confession. Appellant's Brief at 18. The standard of review an appellate court applies when considering an order denying a suppression motion is well established:

> In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the record. **Commonwealth v. Sanders**, 42 A.3d 325, 330 (Pa. Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. **Id.**

**Commonwealth v. Haynes**, 116 A.3d 640, 644 (Pa. Super. 2015). Additionally, we may consider only the evidence presented at the suppression hearing. **In re L.J.**, 79 A.3d 1073, 1085–1087 (Pa. 2013).

"The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." **Commonwealth v. Templin**, 795 A.2d 959, 961 (Pa. 2002) (citation omitted). Moreover, "the voluntariness of a confession is determined by the totality of the circumstances." **Id.** at 963–964. Our Supreme Court has further explained as follows:

> In determining voluntariness, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. "By the same token, the law

does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself." ***Commonwealth v. Graham***, 408 Pa. 155, 162, 182 A.2d 727, 730–31 (1962). Factors to be considered in assessing the totality of the circumstances include the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

***Id.*** at 966 (some internal quotation marks and citations omitted).

Here, Appellant does not challenge the duration, conditions, or means of the custodial interrogation conducted by Troopers Domenick and Birckbichler.[5]  Rather, Appellant argues that his waiver of rights was not voluntary because the troopers did not inform him "that he had legal representation at the time of the custodial interrogation or that his [counsel] had advised members of the Pennsylvania State Police not to question Appellant with regards to this matter."  Appellant's Brief at 25.[6]  We note that Appellant rests his argument only on his federal constitutional rights to remain silent and to counsel under the Fifth and Sixth Amendments, respectively.  ***Id.***

_____

[5]  Considering the totality of the circumstances presented at the suppression hearing, we have no doubt that Appellant validly waived his constitutional rights.  The record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit Appellant's statement.  N.T., Suppression, 10/21/16, at 21–25, 56–58, Commonwealth Exhibits 1, 2.

[6]  Troopers Domenick and Birckbichler knew while *en* route to Kentucky that defense counsel had contacted Trooper Josh Thomas of the Pennsylvania State Police, advised Trooper Thomas that he had been retained as Appellant's attorney, and instructed Trooper Thomas that no one was to speak with Appellant.  N.T., 10/21/16, at 29–32.

Upon review, we conclude that Appellant's argument is "untenable as a matter of both logic and precedent." ***Moran v. Burbine***, 475 U.S. 412 (1986).

The United States Supreme Court granted *certiorari* in **Moran** to decide "whether a prearraignment confession preceded by an otherwise valid waiver must be suppressed either because the police misinformed an inquiring attorney about their plans concerning the suspect or because they failed to inform the suspect of the attorney's efforts to reach him." **Moran**, 475 U.S. at 420. Upon review of Burbine's application for writ of *habeas corpus*, the district court of Rhode Island denied the defendant's motion to suppress his confession. ***Burbine v. Moran***, 589 F. Supp. 1245 (D.C. R.I. 1984). The First Circuit Court of Appeals reversed. ***Burbine v. Moran***, 753 F.2d 178, 185 (1st Cir. 1985). Reversing the Court of Appeals, the **Moran** Court opined:

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right. Under the analysis of the Court of Appeals, the same defendant, armed with the same information and confronted with precisely the same police conduct, would have knowingly waived his **Miranda** rights had a lawyer not telephoned the police station to inquire about his status. Nothing in any of our waiver decisions or in our understanding of the essential components of a valid waiver requires so incongruous a result. No doubt the additional information would have been useful to respondent; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. ***See, e.g., Oregon v. Elstad***, 470 U.S. 298, 316–317, 105 S.Ct. 1285, 1296–1297, 84 L.Ed.2d 222 (1985); ***United States v. Washington***, 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977). ***Cf. Hill v. Lockhart***, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); ***McMann v. Richardson***, 397 U.S. 759,

769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law. The Court of Appeals' conclusion to the contrary was in error.

Nor do we believe that the level of the police's culpability in failing to inform respondent of the telephone call has any bearing on the validity of the waivers. . . . [W]hether intentional or inadvertent, the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of respondent's election to abandon his rights. . . . Nor was the failure to inform respondent of the telephone call the kind of "trick[ery]" that can vitiate the validity of a waiver. *Miranda*, 384 U.S., at 476, 86 S.Ct., at 1629. Granting that the "deliberate or reckless" withholding of information is objectionable as a matter of ethics, such conduct is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. Because respondent's voluntary decision to speak was made with full awareness and comprehension of all the information *Miranda* requires the police to convey, the waivers were valid.

*Moran*, 475 U.S. at 422–424.[7]

---

[7] In a case of first impression, the Pennsylvania Supreme Court addressed whether *Moran* applied in the context of an accused's state constitutional right to counsel in *Commonwealth v. Arroyo*, 723 A.2d 162 (Pa. 1999). The *Arroyo* Court held that the state constitutional right to counsel is co-terminous with the Sixth Amendment right to counsel and attaches at the first formal charging proceeding. *Arroyo*, 723 A.2d at 170; *accord Commonwealth v. McCoy*, 975 A.2d 586, 590 (Pa. 2009) (holding right to counsel attaches at initiation of adversary judicial proceedings, generally at arraignment). The Pennsylvania Supreme Court concluded that, because Arroyo did not have a pre-arraignment right to counsel, "there [was] obviously no need . . . to address [Arroyo's] claim that this right to counsel was violated." *Arroyo*, 723 A.2d at 170 n.9.

Applying **Moran** to the case at hand, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to suppress. Although Appellant had a Fifth Amendment right to remain silent during the custodial interrogation by Troopers Domenick and Birckbichler, the record confirms that he voluntarily waived that right, and Appellant's Sixth Amendment right to counsel had not attached at the time he confessed. Therefore, the troopers' failure to inform Appellant that his family had hired counsel and that counsel had instructed Pennsylvania State Trooper Thomas that no one was to speak with Appellant is immaterial to the voluntariness of Appellant's waivers. **Accord Moran**, 475 U.S. at 422–424;[8] **Arroyo**, 723 A.2d at 170. "Because [Appellant's] voluntary decision to speak was made with full awareness and comprehension of all the information **Miranda** requires the police to convey, the waivers were valid." **Moran**, 475 U.S. at 424. Appellant's suppression challenge lacks merit.

Judgment of sentence affirmed.

---

[8] In the wake of **Moran**, the Pennsylvania Supreme Court twice reaffirmed that the right to the presence of counsel belongs to a suspect and may not be invoked by a third party. **See Commonwealth v. Edmiston**, 634 A.2d 1078, 1086 n.1 (Pa. 1993) ("Here, any right to the presence of legal counsel belonged solely to appellant and may not be assumed by third parties."); **Commonwealth v. Hall**, 701 A.2d 190, 198 (Pa. 1997) ("Since one's Sixth Amendment and Fifth Amendment rights are personal, they cannot be invoked by another party.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/24/2018