**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICOLI ANTONIO SANTANA | |
| Appellant | No. 341 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 30, 2019
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0004819-2017

BEFORE:  SHOGAN, STABILE, and PELLEGRINI,* JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 21, 2020**

Appellant Nicoli Antonio Santana appeals from the January 30, ,2019 judgment of sentence entered in the Court of Common Pleas of Berks County ("trial court"), following his jury convictions for murder in the first degree, three counts of aggravated assault, possessing instruments of crime, and three counts of recklessly endangering another person ("REAP").[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As recounted by the trial court:

> On February 28, 2017, [Appellant] entered DeCarlo's Bar & Grill ("DeCarlo's") at around 8:50 p.m.  [A] [f]ew hours later, on March 1, 2017 at around 1 a.m., Ian Moore ("Moore"), Miguel Colon ("Colon"), and Johnny Corchado ("Corchado") met up at DeCarlo's.  As soon as Moore, Colon, and Corchado entered

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), (4), 907(a), and 2705, respectively.

DeCarlo's, [Appellant] immediately stood up and walked to the back corner portion of DeCarlo's. At approximately 1:10 a.m. when Moore went to the bathroom and came back to order a drink at the front of the bar, Appellant moved to the other side of the bar close to the front door and waited leaning against the wall. In the almost five-hour term that Appellant was at DeCarlo's, Appellant consumed three drinks total; two bottles of Guinness Extra Stout and a small glass of mixed alcohol drink. Moore, Colon, and Corchado had drinks and talked briefly at the bar and left DeCarlo's through the front door at around 1:30 a.m.

A few seconds after Moore, Colon, and Corchado left the bar, Appellant followed them and lingered in the vestibule of the bar, leaning in and out of the doorway observing Moore, Colon, and Corchado walking through the parking lot. Appellant then went down the steps and walked through the stone lot and approached Moore, Colon, and Corchado stalking the trio while hugging the side of the building. When Appellant was about 15 feet from Moore, Colon, and Corchado, Appellant pulled a handgun out and fired multiple shots at Moore.

Corchado fled in the direction of DeCarlo's while Moore and Colon fled in the direction of Cherry Street. One of the shots hit Colon on his left thigh and one of the shots hit Moore on his arm. Colon at that point fled toward his car while Moore fled toward S 3rd Street. Appellant did not chase Colon but chased Moore onto zero hundred block of S 3rd Street.

Appellant eventually caught up with Moore. At close range, Appellant fired multiple shots at Moore[, who] tumbled down to the ground. Appellant shot a total of ten rounds at Moore in the parking lot and in the vicinity of zero hundred block of S 3rd Street, and as a result, Moore suffered three gunshot wounds. Two of them were in the chest and abdomen area.

Appellant started walking away from Moore, but then went back and pistol-whipped Moore, who was already on the ground. Appellant left the scene, went back to his parked ear on the 200 block of Cherry Street and drove off. Officers responded to radio dispatch for shots fired and arrived at the zero hundred block of S 3rd Street. Officer Babbit and Officer White arrived at the scene and found Moore lying on the ground. Officers asked Moore some questions, but Moore was not able to give any answer as he was having a hard time breathing. Moore died as a result of the gunshot wounds to his chest and abdomen area.

Trial Court Opinion, 5/1/19 at 1-2 (unpaginated) (record citations omitted).

Following a jury trial, Appellant was convicted of the foregoing crimes. On January 30, 2019, the trial court sentenced Appellant to, *inter alia*, life

imprisonment. Appellant did not file any post-sentence motions. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single issue for our review: "Was the evidence insufficient to sustain Appellant's conviction for murder in the first degree."[2] Appellant's Brief at 1. At the core, Appellant argues only that the evidence adduced at trial is insufficient to establish that he possessed the specific intent to kill Moore.[3] In support, he claims that he intended only to "scare" Moore, and not kill him. Appellant's Brief at 7.

"A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence

---

[2] Appellant fails to state with specificity the element or elements of first-degree murder upon which he alleges the evidence is insufficient. We, nonetheless, proceed to the merits of this appeal because we are able to discern his arguments.

[3] To the extent Appellant raises a diminished capacity defense argument in his reply brief, such argument is waived because it was neither contained in his nor the Commonwealth's brief. The Pennsylvania Rules of Appellate Procedure make clear that an "appellant may file a brief in reply to matters raised by appellee's brief or in any *amicus curiae* brief and not previously addressed in appellant's brief. Pa.R.A.P. 2113(a). Appellant, therefore, is prohibited from raising new issues. **See Commonwealth v. Fahy**, 737 A.2d 214, 218 n.8 (Pa. 1999) (discussing a prior version of Rule 2113(a) that did not address *amicus* briefs). Additionally, "a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief. When an appellant uses a reply brief to raise new issues or remedy deficient discussions in an initial brief, the appellate court may suppress the non-complying portions." **Id.**

to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). We recently explained in *Commonwealth v. Baker*, 201 A.3d 791 (Pa. Super. 2018), *appeal denied*, 215 A.3d 963 (Pa. 2019):

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a willful, deliberate and premeditated killing. To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill.

*Baker*, 201 A.3d at 795 (citations and quotation marks omitted). "A jury may infer the intent to kill based on the accused's use of a deadly weapon on a vital part of the victim's body." *Id.* at 795-96 (citation omitted); *see Commonwealth v. Nichols*, 692 A.2d 181, 184-85 (Pa. Super. 1997) ("[I]t

is well settled that the use of a deadly weapon on a vital part of the body is sufficient to establish a specific intent to kill.").

Instantly, based upon the evidence presented at trial, as detailed above and viewed in a light most favorable to the Commonwealth, we agree with the trial court's conclusion that the Commonwealth proved beyond a reasonable doubt that Appellant committed murder in the first degree. The trial court explained:

> Evidence, including Appellant's own testimony, established that after Appellant saw Moore in DeCarlo's, Appellant waited at DeCarlo's for at least twenty minutes until Moore left DeCarlo's; Appellant never approached nor spoke to Moore while in the bar, and in fact furtively avoided being seen by him. Appellant then followed him to the parking lot where Appellant started to shoot multiple rounds at Moore. Of the three who fled from the shooting, Appellant specifically chose to chase Moore; and thereupon when Appellant caught up with Moore; engaged in a struggle and shot multiple shots in the abdomen and chest area and killed Moore. This sequence of events established by the record clearly supports that the killing was a classic murder by lying in wait. Moreover, the record shows Appellant shot at Moore and inflicted deadly wounds on vital parts, abdomen and chest, of his body which supports an inference to specific intent to kill.[4]

Trial Court Opinion, 5/1/19 at 4 (unpaginated). Thus, in light of the foregoing, especially his fatally shooting Moore in the chest and abdomen, we conclude that Appellant indeed possessed the requisite and necessary intent to kill Moore. Accordingly, we affirm the trial court's judgment of sentence.

---

[4] *See Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008) (noting that the chest is a vital part of the body); *see also Commonwealth v. Sepulveda*, 855 A.2d 783, 788 (Pa. 2004) (noting that abdomen is a vital part of the human body).

Judgement of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/21/2020</u>