J-S73009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH WAYNE DEAVERS | : | |
| | : | |
| Appellant | : | No. 506 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 5, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002508-2018

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 22, 2020**

Appellant, Kenneth Wayne Deavers, appeals from the judgment of sentence entered after he was convicted of resisting arrest, public drunkenness, disorderly conduct, and failure of disorderly persons to disperse upon official order.[1]  For the reasons that follow, we reverse the conviction for failure of disorderly persons to disperse upon official order, vacate the judgment of sentence, and remand for a new trial on the charges of resisting arrest, public drunkenness, and disorderly conduct.

In its opinion, the trial court set forth the relevant facts and procedural history of this matter as follows:

> On November 22, 2017, multiple officers were assigned to work on Second Street for bar closings. (Notes of the Testimony, 29). As it was the night before Thanksgiving, the area around

---

[1] 18 Pa.C.S. §§ 5104, 5505, 5503(a)(4), and 5502, respectively.

Second Street was very busy. (N.T., 29). The Commonwealth in presenting its case relied primarily on the testimony of Officer Anthony Fiore. (N.T., 25). Officer Fiore was stationed outside of Sawyer's Bar with Agent Jed Chittum. (N.T., 29-30). The duties of the officers stationed in the area were for the purposes of crowd control. (N.T., 30-31). Officer Fiore indicated that police presence is a necessity because patrons who are exiting the bars will block sidewalks, roadways, and passageways which can be dangerous if there is an emergency and vehicles cannot get through the area. (N.T., 31) On that evening in particular, Officer Fiore indicated that the volume of pedestrians was so large that the roadways near Sawyer's on Second Street [were] shut down. (N.T., 31).

At approximately 2:15 a.m. on November 23, 2018, Sawyer's began to close and the staff at Sawyer's were actively trying to get people to exit the bar. (N.T., 32). Officer Fiore indicated that normally he and other officers would allow the patrons to congregate outside of the bars and wait for their friends, however, on this particular night they did not because people were spilling into the street. (N.T., 33). He estimated that there [were] a "couple hundred" people standing outside of Sawyer's on that night. (N.T., 33). Between 2:20 and 2:25 a.m. the stationed officers g[o]t an order to start moving people along. (N.T., 33).

At some point, Officer Fiore encounters [Appellant]. (N.T., 35). He described that [Appellant] walked towards him as Officer Fiore walked towards the crowd. *Id.* He gave [Appellant] the direction to continue walking in the same direction that he was giving to everyone else and [Appellant] stared at the officer. (N.T., 36). Officer Fiore repeated himself believing that [Appellant] was unable to hear him. *Id.* Again, [Appellant] looked at Officer Fiore without any acknowledgement as to the direction Officer Fiore gave to him. (N.T., 36). [Appellant] moves closer towards Officer Fiore and states to him "you don't have to play the f**king violin for me, bro." *Id.* Officer Fiore reiterates to [Appellant] that he has to leave the area. (N.T., 37). At this point, Officer Fiore believes that [Appellant] was intoxicated because he had the odor of alcohol on him. (N.T., 37-38). Again, Officer Fiore gave [Appellant] another instruction to continue walking north. (N.T., 38). [Appellant] told Officer Fiore that he would not continue walking north because his car was parked in the opposite direction. *Id.* Officer Fiore again told [Appellant] that he cannot walk south and put his hand out in front of him and placed it on

[Appellant's] chest. (N.T., 38-39). [Appellant] responded by slightly pushing Officer Fiore back. *Id.* Officer Fiore described that he "took a couple steps" with [Appellant] and told him to continue north. (N.T., 38-39). Again, [Appellant] stated that he did not want to go in that direction and swatted Officer Fiore's arm from his chest. *Id.* Officer Fiore stated that he made a "split-second decision" to grab [Appellant] by his coat and take him to the ground. (N.T., 39-41). As soon as both Officer Fiore and [Appellant] hit the ground, Officer Fiore rolled off of [Appellant]. (N.T., 41). Next, Officer Fiore and Agent Chittum attempt to gain control of [Appellant] by rolling him over. *Id.* Officers gave multiple commands to [Appellant] to stop resisting. (N.T., 41). Eventually, Officers are able to subdue [Appellant], however, it took several officers to do so. *Id.* At that point in time, Officer Fiore puts [Appellant] in handcuffs and assists him to his feet. (N.T., 43). [Appellant] is informed by Officers that he is under arrest, and he is escorted to stand in front of Officer Fiore's vehicle. (N.T., 43-44). Officer Fiore further indicated that once arrested, [Appellant] was screaming that this was police brutality and asking for people to record the events. (N.T., 44). [Appellant] is transported to the booking center, where he was held for several hours due [to] the public drunkenness citation. (N.T., 46-47). After being held for several hours, [Appellant] was released. *Id.*

Deputy Josh Pierce also testified that he was serving on the bar closure detail on the morning of November 23, 2018. (N.T., 76). Deputy Pierce testified that he had seen the situation occur between Officer Fiore and [Appellant]. (N.T., 78). Deputy Pierce's description of the incident was almost identical …. *Id.* Deputy Pierce [assisted] Officer Fiore and Agent Chittum. (N.T., 79). During the struggle with [Appellant], Deputy Pierce gave him three (3) warnings that he would be tased if he did not comply with the officer's orders. *Id.* [Appellant] did not comply and Deputy Pierce tased him. (N.T., 79).

Trial Court Opinion, 6/3/19, at 2-4 (footnote omitted).

As noted, the Commonwealth charged Appellant with resisting arrest, public drunkenness, disorderly conduct, and failure of disorderly persons to disperse upon official order. Criminal Information, 11/23/17. The case

proceeded to trial on November 20, 2018. Appellant appeared at trial without counsel, and he requested to represent himself. N.T. (Trial), 11/20/18, at 5. The trial court conducted a colloquy to determine whether Appellant was knowingly, intelligently, and voluntarily waiving his right to counsel. *Id.* at 5-10. After the colloquy, the trial court permitted Appellant to represent himself, and Appellant waived his right to a jury trial. *Id.* at 9-10. At the conclusion of the trial, Appellant was found guilty on all counts. *Id.* at 110.

On February 5, 2019, the trial court sentenced Appellant to two years of probation for resisting arrest and for failure of disorderly persons to disperse upon official order. N.T. (Sentencing), 2/5/19, at 8-9. The court ordered the sentences to run concurrently. *Id.* The trial court imposed no further sentence on the remaining counts.[2] *Id.* This resulted in an aggregate sentence of two years of probation.

On February 14, 2019, Appellant filed a *pro se* post-sentence motion. On February 26, 2019, Attorney James J. Karl entered his appearance on behalf of Appellant. On March 4, 2019, the trial court denied Appellant's post-sentence motion, and this timely appeal followed. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

---

[2] The crimes of resisting arrest and failure of disorderly persons to disperse upon official order were graded as misdemeanors of the second degree, and public drunkenness and disorderly conduct were graded as summary offenses. N.T. (Sentencing) 2/5/19, at 2.

- 4 -

On appeal, Appellant presents the following issues for this Court's consideration:

I. Did not the lower court fail to insure that [Appellant's] waiver of his right to counsel was knowing, voluntary, and intelligent when the court in its colloquy failed to comply with the minimum standards set forth in Pa.R.Crim.P. 121(A)(2)?

II. Was not the evidence insufficient to sustain a conviction for "failure of disorderly persons to disperse upon official order" at 18 Pa.C.S. §5502 when the order to disperse was not preceded by the commission of disorderly conduct of three or more persons as required under the statute?

Appellant's Brief at 5 (full capitalization omitted).

In his first issue, Appellant assails the validity of his waiver of his right to counsel. Appellant's Brief at 10. We review this issue bearing in mind the following precepts:

It is the responsibility of the trial court to ensure that a colloquy is performed if the defendant has invoked his right to self-representation. Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of these rights can never be harmless. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.

*Commonwealth v. Johnson*, 158 A.3d 117, 121 (Pa. Super. 2017) (internal citations and quotation marks omitted). "In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." *Id.* (citation omitted). Failing to conduct an on-the-record colloquy pursuant to Pa.R.Crim.P. 121(C)

before allowing a defendant to proceed *pro se* constitutes reversible error. **_Id._** at 121-122. Additionally, Pa.R.Crim.P. 121(A) provides:

> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
>
>> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>>
>> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>>
>> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>>
>> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2).

The record reveals the following exchange relevant to Appellant's waiver of his right to counsel:

THE COURT: All right.

[CHIEF DEPUTY DISTRICT] ATTORNEY CANAVAN: Your Honor, this is the time and date set for a bench trial on this matter. [Appellant] is present representing himself. … Do you want to approach?

[APPELLANT]: Sure.

THE COURT: Let's have [Appellant] sworn in, please.

COURTROOM CLERK: You need to raise your right hand. Do you swear or affirm testimony you're about to give this Honorable Court will be the truth, the --

[APPELLANT]: Um, I reserve the right to not have to make testimony.

THE COURT: I'm just going to verify that you're representing yourself and you don't want an attorney to represent you.

[APPELLANT]: Oh, yeah. I'm fine representing myself.

THE COURT: Okay. State your name for the record.

[APPELLANT]: Um, the name is I've been told for 28 years is Kenneth William[3] Deavers, Jr.

THE COURT: And how old are you?

[APPELLANT]: I am 28 years old.

_____

[3] The notes of testimony reflect Appellant stated that his name is Kenneth William Deavers, Jr. N.T. (Trial), 11/20/18, at 4. However, throughout the certified record, specifically in the documents filed *pro se*, Appellant identifies himself as Kenneth Wayne Deavers, Jr. [Appellant's *pro se*] Motion to Suppress Alleged Statements and Strike Partial Testimony in the Evidence, 11/14/18; [Appellant's *pro se*] Motion to Video Record Proceedings, 11/14/18; [Appellant's *pro se*] Motion to Strike/Dismiss, Nullify Judgement, and Request for Full Finding of Fact and Conclusions of Law, 2/14/19. Because the November 20, 2018 proceeding appears to be the only time Appellant's middle name was recorded as William, this may have been an uncharacteristic error by the court reporter or an intentional or accidental misstatement by Appellant. Because the vast majority of documents identify Appellant as Kenneth Wayne Deavers, Jr., that is the name we utilize in this Memorandum.

THE COURT: How far did you go in school?

[APPELLANT]: I attended college for nearly two years.

THE COURT: All right. So you graduated. You read, write, and understand the English language?

[APPELLANT]: Yes.

THE COURT: Do you understand what I'm saying here today?

[APPELLANT]: Yes.

THE COURT: And you're in here today representing yourself. And I believe this is a misdemeanor of the second degree?

ATTORNEY CANAVAN: Two second degree misdemeanors, two summary offenses. It's resisting arrest, failure to disperse upon official order, which are the misdemeanors; public drunkenness and disorderly conduct are the summaries.

THE COURT: And you understand with a misdemeanor of the second degree there's a maximum of up to two years of incarceration and a $5,000 fine on each one of those? And because they're misdemeanors of the second degree, you're entitled to counsel. And if you cannot afford counsel, one would be granted to you. Do you understand that?

[APPELLANT]: Um, yes, I understand that. However, I would like to state that I have -- I feel as though it's in my best interest to represent myself because I cannot afford private counsel. And if I were to have the free counsel provided that would be supplied to me by the state, which is the same people who are prosecuting me, so to me it seems like a conflict of interest. So that's why I've choosen -- chosen to do it myself. And I also feel confident to speak for myself.

THE COURT: That's fine. And I'm more than happy to let you represent yourself. I just need to go through a series of questions to make that determination. So you understand the maximum penalties that could be imposed against you?

[APPELLANT]: I understand that, yes.

THE COURT : And you're -- So once I understand you don't want anyone to represent you and that you want to represent yourself at the same level as somebody who did seven years of higher education and passed the Commonwealth's licensing to be here. Do you understand that? So you're going to be held at that same standard.

[APPELLANT]: Yep.

THE COURT: Do you understand that? So there may be issues or defenses or things that you may not be aware of that if not raised will be lost for you forever because you're representing yourself.

[APPELLANT]: Well, I always have a right to appeal; is that correct?

THE COURT: Absolutely.

[APPELLANT]: And I can appeal on --

THE COURT: But there may be issues that because you didn't raise them will not be appealable because you're representing yourself and are not familiar with some of the rules and issues that could be brought.

[APPELLANT]: Um, okay, well, I -

THE COURT: Can you stand straight and put your hands to your side. It makes me very nervous when somebody has their hands --

[APPELLANT]: Sure.

THE COURT: All right, so you understand all that? You understand that there may be issues lost to you because you're representing yourself?

[APPELLANT]: What kind of issues?

THE COURT: Defensible issues, issues that you didn't bring, objections that are not brought because you're not familiar

with the laws. By representing yourself, you're putting yourself in a position where --

[APPELLANT]: I'm pretty --

THE COURT: -- I'm not going to assist you. You have to be familiar with --

[APPELLANT]: I'm pretty familiar with the laws -- the charges that are being brought against me.

THE COURT: Okay. Well, I'm just making it very clear that if there are not proper objections, if there are not proper statements that you may lose issues because they're not brought up properly.

[APPELLANT]: Okay.

THE COURT: All right.

[APPELLANT]: Um --

THE COURT: And you're doing this because you're voluntarily, knowingly, and intelligently representing yourself in this matter?

[APPELLANT]: Yes.

THE COURT: Okay.

[APPELLANT]: Um, I don't know that our -- um, our issue of my right to record has, uh, been resolved.

THE COURT: Well, that is going to be denied because there is no recordings of the courtroom. There is no videotaping of the courtroom proceedings in Pennsylvania.

[APPELLANT]: Did you have a chance to read my motions?

THE COURT: I'm not allowing it. Okay, so that's going to be denied. All right.

[APPELLANT]: I just want --

THE COURT: Now, you also have the right to a jury trial where 12 members from the Dauphin County community would be selected and listen to the facts of this case and render a decision on your guilt or innocence.

The Commonwealth would have to prove your guilt beyond a reasonable doubt. You would not have to testify nor present any evidence on your own behalf.

It looks like this was listed for a bench trial but I want to make it very clear that I will be the only one listening to the evidence and making a decision if you decide not to go to a jury trial.

So you have voluntarily, knowingly, and intelligently made up your mind that you would prefer to have one person listen to the evidence as opposed to 12 members from the Dauphin County community?

[APPELLANT]: I would rather have one person who knows the laws, yes. However, I would like to state on the record that I don't agree with the denial of the --

THE COURT: Well, then, I'll note that objection so that you do have an appealable issue.

[APPELLANT]: City of Philadelphia -- Fields versus City of Philadelphia they said that we always have right to record police officers doing their duties in a public place. This is a public courtroom and there are police officers in this courtroom.

THE COURT: Okay, well, I'll still deny it. So you can appeal that to any Superior Court you want.

All right, so with the denial of you denying the right -- your right to have a jury trial so you're asking me to listen to the facts and render a decision based on the evidence. You would not have to testify. You would not have to present any evidence on your own behalf. It would be my decision based on the Commonwealth's presentation.

[APPELLANT]: Well, I do have some evidence.

THE COURT: Well, and you're allowed to put -- I'm just saying that you don't -- under the Constitution you don't have to present anything, that they have to prove you guilty beyond a reasonable doubt. You understand all that?

[APPELLANT]: Yes.

THE COURT: Any questions?

[APPELLANT]: No.

THE COURT: All right. I'm going to have him sign the back of the form indicating that he understood the rights and that he is voluntarily waiving those rights and proceeding with a bench trial.

[APPELLANT]: Would it make more sense for me to bring my paperwork and step up here?

THE COURT: No. I'm going to let you go back there because the Commonwealth has to go first anyway so I'd rather have you sit.

All right, Mr. Canavan, you're ready to proceed[.]

N.T. (Trial), 11/20/18, at 3-10.

The notes of testimony reflect that the trial court informed Appellant: he has a right to counsel; he has a right to have counsel appointed if he is indigent; he is bound by the court rules of procedure and counsel would be familiar with these rules; there is a possibility that counsel may be aware of certain defenses and some defense may be lost if not raised; and several rights, if not timely asserted, may be lost permanently. Therefore, we conclude that the requirements set forth in Pa.R.Crim.P. 121(A)(2)(a), (d), (e), and (f), were satisfied.

However, it is apparent that the trial court did not inform Appellant of the elements of the charges against him or the range of permissible sentences available on each criminal charge.[4]   Consequently, the requirements of Pa.R.Crim.P. 121(A)(2)(b) and (c) were not satisfied in the colloquy.   Thus, we are constrained to vacate Appellant's judgment of sentence and remand for a new trial.   **See Commonwealth v. Houtz**, 856 A.2d 119, 130 (Pa. Super. 2004) (concluding that a new trial was required where the trial court did not ensure appellant understood the nature and elements of the charges and the range of penalties the court could impose).

Next, Appellant avers that the evidence was insufficient to establish the crime of failure of disorderly persons to disperse upon official order pursuant to 18 Pa.C.S. § 5502.  Appellant's Brief at 14.   Although we have concluded that we are required to vacate Appellant's judgment of sentence and remand for a new trial, "[t]he reason for this further analysis is that where the issue presents a challenge to the sufficiency of the evidence, a retrial on this offense would be precluded in the event the issue has merit." **Commonwealth v. Phillips**, 93 A.3d 847, 855 (Pa. Super. 2014) (citation omitted); **see also Commonwealth v. Jordan**, 212 A.3d 91, 94 (Pa. Super. 2019) (a successful challenge to the sufficiency of the evidence results in discharge).  Accordingly,

---

[4] Although the trial court stated the maximum fine and sentence permitted for a misdemeanor of the second degree, N.T. (Trial), 11/20/18, at 5, the court did not provide the range of sentences available for the misdemeanors, and it did not mention the fines or penalties available for the summary offenses.

we address Appellant's challenge to the sufficiency of the evidence with respect to failure of disorderly persons to disperse upon official order.

Our standard and scope of review are well settled. A determination of evidentiary sufficiency presents a question of law, and our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Baker*, 201 A.3d 791, 795 (Pa. Super. 2018) (citation omitted).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Id.* (internal citations, quotation marks, and brackets omitted).

This was a bench trial, and the trial court served as the factfinder. "[T]he finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Davison*, 177 A.3d 955, 957 (Pa. Super. 2018) (citation omitted).

The crime of failure of disorderly persons to disperse upon official order is defined as follows:

- 14 -

> Where three or more persons are participating in a course of disorderly conduct which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor of the second degree.

18 Pa.C.S. § 5502. A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture; or
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a). After review, we conclude that the Commonwealth presented no evidence that there were "three or more persons . . . participating in a course of disorderly conduct." 18 Pa.C.S. § 5502.

Although the testimony adduced at trial demonstrated that there was a crowd of hundreds present on the street outside of Sawyer's Bar on the night in question, there was no testimony that anyone other than Appellant, who was by himself at the time Officer Fiore encountered him, engaged in disorderly conduct. To the contrary, Officer Fiore testified as follows:

> Q: Again, up until you encounter the defendant, were the people generally responsive to your requests to disperse?

- 15 -

A: Yep. They just kept walking.

N.T. Trial, 11/20/18, at 35. There were no incidents of disorderly conduct committed by anyone other than Appellant. Indeed, Officer Fiore testified that the evening had been quiet:

> Q. And prior to the incident that happened after the closing of Sawyer's, can you tell Judge Curcillo, was it a bad night, [were] there fights that you had to deal with, unruly patrons, or was it kind of a regular night?
>
> A. It was a good night.
>
> Q. So not—Do you recall—
>
> A. The radio was quiet.
>
> Q. So you don't recall yourself making any arrests prior to that this night?
>
> A. I did not.
>
> Q. And you didn't hear on the radio anyone else making arrests prior to this?
>
> A. No, sir.

N.T. (Trial), 11/20/18, at 30.

Even when viewed in the light most favorable to the Commonwealth, we conclude there was insufficient evidence that anyone other than Appellant engaged in disorderly conduct. This necessitates our conclusion that the Commonwealth failed to establish that there were "three or more persons … participating in a course of disorderly conduct." 18 Pa.C.S. § 5502. Accordingly, we reverse Appellant's conviction for failure of disorderly persons

to disperse upon official order, vacate the judgment of sentence on that count of the Criminal Information, and discharge Appellant on that count as well.

Judgment of sentence vacated. Conviction for failure of disorderly persons to disperse upon official order reversed and Appellant discharged on that count. Case remanded for a new trial on the charges of resisting arrest, public drunkenness, and disorderly conduct. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/22/2020