J-A27018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK FELDER | : | |
| | : | |
| Appellant | : | No. 382 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007351-2017

BEFORE:  BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 13, 2020**

Appellant, Frank Felder, appeals from the judgment of sentence entered

on January 18, 2019, in the Philadelphia County Court of Common Pleas.

We affirm.

In its April 4, 2019 opinion, the trial court set forth the relevant facts

and procedural history of this case as follows:

> On the afternoon of December 13, 2016, the decedent Juan
> "Gogo" Cruz [("the decedent")] and his friends, David Ayala and
> Hector "Goto" DeJesus-Bone, sold heroin branded as "Colt-45" on
> the 3000 Block of North Orkney Street in the Fairhill neighborhood
> of Philadelphia. Shortly after noon, the decedent and Goto were
> approached by [Appellant], who arrived via bicycle from 5th and
> Clearfield Streets. After [Appellant] inquired about the type of
> heroin they had for sale, the decedent told him that they were
> selling "Colt-45" and [Appellant] left the area. N.T. 11/13/2018 at
> 36-50; Commonwealth Exhibit C-6.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Minutes later, [Appellant] returned to the area, approached the decedent, and asked to purchase two packets of "Colt-45". The decedent agreed to sell [Appellant] the heroin and led him to a grey abandoned car on Orkney Street, where the decedent had concealed his stash of heroin. Moments later, Ayala heard three or four gunshots and saw [Appellant] shoot the decedent. Immediately after the shooting, [Appellant] searched the decedent's pockets before absconding via bicycle. N.T. 11/13/2018 at 41-43, 50-54; Commonwealth Exhibit C-6.

Moments before the shooting, eyewitness Dasia Hernandez turned onto Clearfield Street from Fifth Street and heard gunfire coming from the direction of Orkney Street. Hernandez watched two older Hispanic males run towards 5th Street, followed by the decedent running behind them. When the decedent reached the corner of Orkney and Clearfield, Hernandez watched as he collapsed. Immediately thereafter, [Appellant] approached the decedent's body and emptied his pockets. N.T. 11/13/2018 at 134; Commonwealth Exhibit C-30.

After [Appellant] retreated to Orkney Street, Hernandez saw him ride on a bike on Clearfield Street and travel towards 5th Street. Hernandez gave chase in her vehicle, called 911, and told the operator that [Appellant] was wearing a black leopard-patterned vest and narrated her efforts to follow [Appellant] as they occurred, until she lost sight of him after pursuing him for approximately one minute. Commonwealth Exhibits C-30, C-53, C-54; Defense Exhibit D-1.

As Hernandez remained on the line with the dispatcher, she flagged down Philadelphia Police Officers Christopher Daukus and Logan Johnson, who were responding to a radio call for a person with a gun. The officers took Hernandez back to the area of the shooting and set up the crime scene before transferring Hernandez to the Police Administration Building for an interview. There, Hernandez described the shooter as wearing an orange and black leopard patterned vest. N.T. 11/13/2018 at 17-24.

Officer Michael Fahy also responded to the radio call and upon arriving at Orkney and Clearfield Streets, observed the decedent lying on the ground. Fahy immediately placed the decedent in the back seat of his squad car and transported him to Temple Hospital. During transport, a projectile fell from the decedent's body and was recovered for forensic examination. The

decedent was pronounced dead at 12:29 p.m. N.T. 10/26/2018 at 34-42; Commonwealth Exhibit C-42.

Associate Medical Examiner Dr. Victoria Sorokin, an expert in forensic pathology, performed the decedent's autopsy and determined that the decedent suffered three gunshot wounds, including one penetrating gunshot wound to his right chest, and two perforated gunshot wounds to his left back and posterior right thigh, respectively.[3] Dr. Sorokin further recovered a projectile from the decedent's right chest. Dr. Sorokin concluded that the manner of death was homicide caused by multiple gunshot wounds. N.T. 11/13/2018 at 153-154; Commonwealth Exhibit C-42.

> [3] At trial, the parties erroneously stipulated that the autopsy was conducted by a Dr. Santore, whom … records indicate pronounced the decedent's death. Dr. Sorokin completed the autopsy report and … would have testified to her findings but for the parties stipulation. *See* Commonwealth Exhibit C-42.

Officer Tiffany Richardson of the Crime Scene Unit arrived at the location of the shooting and recovered five .45 caliber fired cartridge casings ("FCCs") and a copper jacket projectile. Officer Richardson further examined Officer Fahy's motor vehicle and recovered a projectile that had fallen from the decedent's body. The Firearms Identification Unit determined that all five of the recovered FCCs were fired from the same .45 caliber firearm and that each of the projectiles recovered from Officer Fahy's vehicle and the decedent's chest were .45 caliber. N.T. 11/13/2018 at 90-100, 154-156; Commonwealth Exhibit C-41.

Detectives James Dunlap and Robert Hesser recovered video surveillance evidence from eight locations near the shooting and created a compilation video showing [Appellant] arriving [in] the area of the shooting and interacting with the decedent before moving off camera, then depicting the decedent running away [and] collapsing. Video evidence further shows [Appellant] searching the decedent's body before riding away from the area on his bicycle. N.T. 11/13/2018 at 116-124, 156-160; N.T. Commonwealth Exhibits C-43, C-56.

Detective Gregory Santamala reviewed the surveillance video which tracked an individual wearing a leopard patterned

vest from the crime scene to a residential home at 701 West Allegheny Street in Philadelphia. On December 29, 2016 at 12:22 p.m., police officers executed a search warrant and recovered a box of nine live .45 caliber rounds from the front bedroom, where [Appellant] stayed. Detectives further recovered a leopard print vest matching the description Hernandez provided and seen on the cyclist in the video. N.T. 11/13/2018 at 136-141.

On January 10, 2017, Ayala provided a statement to police and identified the cyclist captured on video as the shooter. On January 31, 2017, police officers arrested [Appellant]. [Appellant] was not licensed to carry a firearm and had previously been convicted of an offense that prohibited him from possessing one. N.T. 11/13/2018 at 43-45, 59; Commonwealth Exhibits C-6, C-45.

Trial Court Opinion, 4/4/19, at 2-5.

[The Commonwealth] charged [Appellant] with Murder and related offenses. On October 26, 2018, the Commonwealth, before this [c]ourt, amended the lead charge of Murder generally to Third-Degree Murder. On that same date, [Appellant] elected to waive his right to a jury and proceed with a bench trial.[1] On November 14, 2018, this [c]ourt convicted [Appellant] of Third-degree Murder, Robbery, Possession of a Firearm by a Prohibited Person [Violation of the Uniform Firearms Act ("VUFA") Section 6105] ("VUFA 6105"), Firearms Not to be Carried Without a License ("VUFA 6106"), Carrying a Firearm on a Public Street in Philadelphia ("VUFA 6108"), and Possession of an Instrument of Crime ("PIC").[1]

> [1] This Court bifurcated the bench trial so that [Appellant's] motions *in limine* … could be reviewed by another judge. On … November 6, 2018, the Honorable Diana L. Anhalt denied [Appellant's] Motion *in Limine* to Exclude Ballistic Evidence, and on November 7, 2018, Judge Anhalt granted [Appellant's] Motion *in Limine* to exclude a hearsay statement and additional discovery.

---

[1] 18 Pa.C.S. §§ 2502(c), 3701(a)(1)(i), 6105(a)(1), 6106(a)(1), 6108, and 907, respectively.

On January 18, 2019, after this [c]ourt had deferred sentencing for completion of pre-sentence and mental health reports, it imposed a sentence of twenty to forty years of imprisonment for Third-Degree Murder; a consecutive term of five to ten years of imprisonment for VUFA 6105, and a concurrent term of ten to twenty years of imprisonment for Robbery, for a total sentence of twenty[-]five to fifty years of imprisonment.[2] On January 23, 2019, [Appellant] filed a Post-Sentence Motion, which this [c]ourt denied on January 25, 2019.

> [2] This [c]ourt imposed no further penalty on the remaining charges.

On February 6, 2019, [Appellant] filed a Notice of Appeal. On February 28, 2019, [Appellant] filed a timely 1925(b) Statement and a Motion for Extension of Time. On March 5, 2019, after this [c]ourt granted [Appellant's] Motion for Extension of Time, [Appellant] timely filed a supplemental Statement of Matters Complained of on Appeal.

Trial Court Opinion 4/4/19, at 1-2.

In this appeal, Appellant presents the following issues for this Court's consideration:

1. Was not the evidence insufficient to sustain a verdict of guilt beyond a reasonable doubt for any of the charges inasmuch as the trial evidence of record viewed in the light most favorable to the Commonwealth and all reasonable inferences derived therefrom was only, at most, equally consistent with [A]ppellant's innocence as with his guilt, in violation of [A]ppellant's constitutional rights under the state and federal constitutions?

2. Did not the trial court err in denying [A]ppellant's motion for a new trial, as the verdict was against the weight of the evidence, where the evidence of record was inherently unreliable, weak and inconclusive and did not establish [A]ppellant was the shooter, such that the conclusion of [A]ppellant's guilt was based purely on speculation and conjecture, in violation of [A]ppellant's constitutional rights under the state and federal constitutions[?]

3. Did not the motions court err as a matter of law in allowing the introduction of a recording of a 911 call into evidence, despite

ruling that certain portions were admissible only to show the "effect on the listener," inasmuch as admission of the entire call violated [A]ppellant's constitutional rights under the state and federal constitutions where the statements made on the call were known to be inaccurate and unreliable?

4. Did not the motions court err by allowing the admission of testimony regarding recovery of bullets from [A]ppellant's room at his aunt's residence, in violation of [A]ppellant's state and federal constitutional rights, where introduction of such evidence was irrelevant and any probative value was outweighed by a danger of unfair prejudice?

5. Did not the trial court err as a matter of law and violate the discretionary aspect of sentencing when it imposed a manifestly excessive and unreasonable sentence of 25 to 50 years of incarceration, where the maximum term of the sentence imposed a term unlikely to end during [A]ppellant's natural life span and such sentence failed to give individualized consideration to [A]ppellant's personal history and background, and was in excess of what was necessary to address the gravity of the offense, the protection of the community, and [A]ppellant's rehabilitative needs?

Appellant's Brief at 5-6.[2]

In his first issue, Appellant asserts the evidence was insufficient to sustain guilty verdicts on any of the charges because the Commonwealth failed to prove beyond a reasonable doubt that Appellant was the shooter. Appellant's Brief at 36. Appellant argues *In re J.B.*, 189 A.3d 390 (Pa. 2018), requires a reversal of the guilty verdicts. Appellant's Brief at 37-41. We disagree.

---

[2] For purposes of our disposition, we have renumbered Appellant's issues on appeal.

"Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." *Commonwealth v. Akhmedov*, 216 A.3d 307, 322 (Pa. Super. 2019) (citation omitted). Additionally:

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Evidence is weak and inconclusive when two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances.

*Id.* (internal citations and quotation marks omitted). "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence presented." *Commonwealth v. Baker*, 201 A.3d 791, 795 (Pa. Super. 2018) (citation omitted). "[A]s an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* (citation omitted).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Strafford*, 194 A.3d 168, 175 (Pa. Super. 2018). "Evidence of identification need not be positive and certain to sustain a conviction." *Id.*

(citation omitted). "Our Supreme Court has stated that 'any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.'" *Id.* at 175-176 (quoting *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973)).

We agree with the Commonwealth that Appellant does not dispute that the evidence established the elements of third-degree murder, robbery, PIC, and the three VUFA convictions; Appellant argues only that the evidence did not establish that he was the perpetrator of those crimes. Commonwealth's Brief at 23, n.5. Accordingly, we need not discuss the individual elements of each crime, and we focus our analysis on only the evidence identifying Appellant as the actor.

As stated above, Appellant asserts that *J.B.* supports his claim that the evidence was insufficient to sustain the guilty verdicts. In *J.B.*, our Supreme Court held that despite the aforementioned deferential standard of review, there is an exception where "the entire body of evidence introduced at trial which furnished the basis for an appellant's conviction is so deficient that it does not reasonably support a finding of guilt beyond a reasonable doubt, as a matter of law." *J.B.*, 189 A.3d at 409. In other words, there may be cases where "the trial evidence equally supported two reasonable but diametrically opposed ultimate inferences: one that the defendant committed the murder, and the second that he did not commit the murder." *Id.* "[I]n

those atypical situations, our Court has consistently held that we are not bound by the factual findings and credibility determinations rendered by the finder of fact, and we are compelled in such circumstances to reverse a legally erroneous conviction." *Id.*

In *J.B.*, our Supreme Court discussed the contradictory nature of the evidence and concluded at most, that it supported two equal but fundamentally inconsistent inferences. *J.B.*, 189 A.3d at 411. The Court explained that the coroner could not fix the exact time of death and provided only a range of times based on rigor mortis. *Id.* Accordingly, the Commonwealth could not prove that the defendant was with the deceased at the time of death. *Id.* Moreover, even if the defendant was with the deceased at or near the time of death, this fact alone did not support an inference of murder; "it merely raised a conjectural suspicion which was in and of itself insufficient to convict." *Id.*

In the case at bar, there is no support for competing reasonable but diametrically opposed ultimate inferences. Although there were conflicting testimony and contradictory statements made, we conclude that there was sufficient evidence identifying Appellant as the perpetrator of the aforementioned criminal acts.

Surveillance video captured Appellant riding his bicycle in the vicinity at the time and location of the crimes. N.T., 11/13/18, at 116-120. Additionally, Appellant admitted that he was the individual on the bicycle. N.T., 11/14/18,

at 65. According to Appellant, he was in the area to purchase heroin from the decedent, and after he gave the decedent $20.00 for heroin, an unidentified "Spanish" person shot and killed the decedent. *Id.* at 71-72. Appellant asserted that after the decedent was shot and fell to the ground, he searched the decedent's body trying only to retrieve the heroin for which he had paid. *Id.* at 72-75.

Another witness, David Ayala, provided a contemporaneous statement to the police after the shooting. N.T., 11/13/18, at 44 (Commonwealth's Exhibit C-6). In his statement, Mr. Ayala accurately described Appellant's clothing, explained that Appellant approached the decedent on a bicycle to buy heroin, and stated that he saw Appellant shoot the decedent. *Id.* However, at trial, contrary to his written statement, Mr. Ayala said that he did not remember identifying Appellant. N.T., 11/13/18, at 44. Mr. Ayala's written statement was marked as Commonwealth's Exhibit C-6 and admitted into evidence. *Id.* The written statement contained Mr. Ayala's description of the shooter, described the events surrounding the shooting, and bore Mr. Ayala's signature on each page. N.T., 11/13/18, at 44; Commonwealth's Exhibit C-6.

On December 28, 2016, Philadelphia Homicide Detective Gregory Santamala applied for a search warrant for the house where Appellant lived. Search Warrant, 12/28/16. Items listed in the search warrant included "[a]ny .45 caliber handguns, ammunition[.]" *Id.* When the police officers executed

the search warrant, they discovered a box containing nine live .45 caliber rounds in Appellant's bedroom. N.T. 11/13/18 at 139. The record reflects that the decedent was shot and killed with .45 caliber ammunition, and .45 caliber cartridge casings were recovered from the crime scene. *Id.* at 94, 155.

The only indication that Appellant did not murder the decedent came from Appellant's own testimony wherein he averred that he merely went through the decedent's pockets after an unidentified third person committed the murder. N.T., 11/14/18, at 65-72. As noted, it was for the trial court as fact-finder to make credibility determinations, and it ultimately chose not to accept Appellant's version of events. In the case at bar, there was an eyewitness who stated that he saw Appellant shoot the decedent in addition to the direct and circumstantial evidence discussed above. There was no such evidence in *J.B.*, and we conclude that *J.B.* is inapplicable.

Pursuant to our scope and standard of review, we discern no error. The mere fact that Mr. Ayala recanted a statement he had previously made to police does not render the evidence insufficient to support Appellant's conviction; the fact-finder was free to evaluate both Mr. Ayala's statement to police as well as his testimony at trial, and it was permitted to believe all, part, or none of the evidence. *Commonwealth v. Hanible*, 836 A.2d 36, 39 (Pa. 2003). Herein, the trial court, sitting as the finder-of-fact chose to believe the evidence establishing that Appellant was the shooter, as it was allowed to do.

- 11 -

*Id.* When viewed in the light most favorable to the Commonwealth as the verdict winner, we conclude that the direct and circumstantial evidence adduced at trial was sufficient to establish beyond a reasonable doubt that Appellant was the perpetrator of the aforementioned crimes. Accordingly, we conclude that Appellant is entitled to no relief.

In his second issue, Appellant avers that the trial court erred in denying his motion for a new trial because the verdict was against the weight of the evidence. Appellant's Brief at 42. "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new

- 12 -

trial. ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting ***Commonwealth v. Clay,*** 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting ***Widmer,*** 744 A.2d at 751-752)). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." ***Commonwealth v. Akrie***, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant properly preserved his weight of the evidence claim by raising the issue in a timely post-sentence motion on January 23, 2019.

Appellant's argument on this issue is largely the same as his attack on the sufficiency of the evidence. Appellant argues that the convictions were unreasonable and present a challenge to the "quality" of the evidence and an assertion that additional evidence, such as "DNA or fingerprint testing," was absent. Appellant's Brief at 42-44.

We reiterate that our review is not a reassessment of the weight of the evidence; it is for an abuse of discretion. *Cash*, 137 A.3d at 1270; *Ferguson*, 107 A.3d at 213. In our disposition of Appellant's first issue, we determined that the evidence was sufficient to support Appellant's convictions; it was entirely within the fact-finder's province to credit the evidence presented by the Commonwealth, which supported the verdict, and to discredit Appellant's version of events, as it apparently did here. *Cash*, 137 A.3d at 1270 (citing *Commonwealth v. Smith*, 861 A.2d 892, 896 (Pa. 2004) (holding that a fact-finder's decision not to credit the appellant's statement does not indicate that the verdicts were against the weight of the evidence; rather, it merely establishes that the fact-finder did not believe the appellant was credible, a conclusion the fact-finder was empowered to make). Despite Appellant labeling the verdicts as speculation and conjecture, Appellant's Brief at 45, we discern no abuse of discretion in the trial court denying Appellant's motion for a new trial. Nothing in the trial court's decision shocks one's sense of justice. Accordingly, Appellant is entitled to no relief on this issue.

In his third claim of error, Appellant avers that the trial court erred in allowing Dasia Hernandez's December 13, 2016 telephone call to 911 dispatch into evidence, despite an earlier ruling from the pretrial motions court ("motions court") that portions of the 911 call were admissible only to show the "effect on the listener." Appellant's Brief at 25-26. Appellant claims that the recording violated Appellant's constitutional rights because certain

statements made on the recording of the 911 call were inaccurate and unreliable. *Id.*

When an appellant challenges the ruling on a motion *in limine*, our scope of review is limited to the relevant pretrial hearing transcripts. *See In re Interests of L.J.*, 79 A.3d 1073, 1088-1089 (Pa. 2013) (noting that our scope of review is limited to the evidence presented at the pretrial hearing). In conducting our review, we apply an abuse-of-discretion standard of review. *Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted). The admissibility of evidence is left to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. *Id.* Moreover, where the trial judge is sitting as the fact-finder, it is presumed the judge will disregard inadmissible or prejudicial evidence and consider only competent evidence. *Commonwealth v. Fears*, 836 A.2d 52, 71 n.19 (Pa. 2003) (citation omitted).

On October 19, 2018, the Commonwealth filed a motion *in limine* requesting to have the recording of Dasia Hernandez's December 13, 2016 911 call admitted into evidence. Commonwealth's Motion *in Limine*, 10/19/18, at 2. On that same day, Appellant filed a motion *in limine* seeking to exclude the 911 call. Appellant's Motion *in Limine*, 10/19/18, at 1-2. On November 7, 2018, the motions court granted Appellant's motion *in limine* as

follows: "[Appellant's] motion in limine to exclude hearsay statement made by witness in 911 tapes is Granted." Order, 11/7/18. However, the record reflects that the order granting the motion *in limine* was limited. The transcripts reveal the parties argued whether a portion of the 911 call was admissible and for what purpose it may be considered by the trial court as the finder of fact. N.T., 11/6/18, *passim*; N.T., 11/7/18, at 3-8.

The record reflects that Ms. Dasia Hernandez[3] made the 911 call. N.T., 11/6/18, at 4-5. A transcript of the 911 call was marked as D-1 ("911 Transcript"). *Id.* at 5.[4] The 911 transcript reflects that Ms. Hernandez called 911 Dispatch and stated as follows: she witnessed a murder; she heard four or five gunshots; the suspected shooter was a black man wearing a leopard-print vest who was fleeing on a bicycle; she was going to follow the suspected shooter; and she provided the location of the incident. 911 Transcript at 1-2.

_____

[3] Ms. Hernandez passed away prior to the hearing and neither testified nor was cross-examined; she was, therefore, unavailable to testify. N.T., 11/6/18, at 4; Pa.R.E. 804(4).

[4] The notes of testimony reflect that an audio recording of the 911 call was played at trial. N.T., 11/13/18, at 132. However, there is no audio recording in the record certified on appeal; we have only the transcript of the 911 call, which was marked as Defense Exhibit D-1 and admitted into evidence. N.T., 11/14/18, at 108. It is well settled that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete and contains all of the materials necessary for the reviewing court to perform its duty. *Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008). This Court's review is limited to the facts contained in the certified record, and anything not contained in the certified record does not exist for purposes of appellate review. *Id.*

However, when the police interviewed Ms. Hernandez a few hours later, she stated that although she heard four or five gunshots, saw the decedent fall and witnessed the person in the leopard-print vest remove items from the decedent's pockets, she did not actually see a gun or the individual in the leopard-print vest shoot the decedent. Investigation Interview Record ("the 483"),[5] 12/13/16, at 1-2.

As noted, the motions court heard argument concerning the admissibility of the 911 transcript and audio recording. The record reveals the following discussion among counsel and the motions court:

> What's in her statement are [sic] not an excited utterance because she doesn't have personal knowledge of it. Therefore, it is not an excited utterance.
>
> Now, how do we work with this?
>
> Because at the end of the day, if this was a jury trial, I would ask you to redact the 911 call, right?
>
> So what does it mean?
>
> In the long and short of it, what I actually think is the most fair thing to do, especially to the extent that it's a bench trial, is to allow the entirety of the evidence, but not to allow you to argue that "I just seen a murder, there's a murderer, he has a gun," that cannot be admitted for the truth asserted.
>
> It can be admitted to show the effect on the listener but not -- doesn't go to the truth.
>
> Does that make sense?

---

[5] The December 13, 2016 Investigation Interview Record was prepared on standard police form 75-483, was marked as defense exhibit D-2, and was referred to in the notes of testimony as "the 483." N.T., 11/6/18, at 5.

That kind of makes sense, you have to admit.

[Appellant's Counsel] MS. FENNELL: It does, Your Honor.  If your ruling [regarding the use of the] 483 still applies.

THE COURT: And the 483 is allowed into evidence to explain -- I think that's the only way to do it so it's like a whole picture, essentially.

And the judge would be able to know that, you know, it is what it is without it being subject to cross-examination.

And I would imagine that, you know, as I'm ruling, you cannot -- anything that deals with -- the things that I recall in my own head about the things that she did not see was she witnessed a murder; she didn't see that.

We'll go through it line by line, and I'm going to give you this copy. So I'm going to highlight the parts with a yellow highlighter that I think fall within -- and Ms. Fennell and [Assistant District Attorney] Ms. Dandy, you can, you know, tell me I'm wrong before I scratch it off.

But these are the things that she lacks **personal knowledge of**: "I just witnessed a murder," correct?

MS. DANDY: Yes.

THE COURT: The "murderer," you know that could take, you know, "is getting away," that all comes out.

"I just witnessed a murder, I just . . . hurry up, I'm gonna go down the wrong way, I'm going to follow him", that's good.

The part in the next paragraph that says "He just killed somebody on Orkney and Indiana," you can keep Orkney and Indiana.

You can keep "The body is laying on the floor."

"I'm following the guy, I'm going the wrong way.  The guy is on 5th and Clearfield, 5th and Clearfield.  He's on a bike.  He's got leopard.  He made a left on 5th and Clearfield.  He made a left on..."

The next paragraph where she says, "He just shot somebody, I'm following the killer" -- I mean, you can't take -- the killer part is not offered for the truth.

"I'm following the killer right now."

"I'm following the murderer right now."

"Oh my God, can't believe I just witnessed a murder."

Then the middle of the next lower, "I followed the murderer but I can't find him now."

In this statement, in the 483, did she say she did not see him with a gun or she saw him with a gun?

MS. DANDY: She did not.

THE COURT: Now, on the third page, "I can get killed" -- I think I'm going to leave "I can get killed too he had a gun" -- no, just that last part, "He had a gun." That's not -- coming into -- like, I'm going to let the judge hear it for the effect on the listener, meaning the declarant. Right? This is why she did the things that she did. This is what she saw, but you can't say, oh, he had a gun, right? You can't argue the truth of that.

"He would have saw me follow him he could have shot me, he could have shot me. Oh my God, I almost crashed. Okay, here they go."

Okay?

Yeah, I think that's the right call.

* * *

MS. DANDY: Your Honor, I'm sorry, just so I'm clear on Your Honor's ruling and what I can argue, I would still be asking that I can infer from what she did see that what she saw was the end of what I'm arguing was the murder.

So although I'm not arguing that she saw the murder, I'll make it very clear that she did not. She saw the decedent fall, and

she saw [Appellant] go th[r]ough the pockets of the decedent before riding off.

THE COURT: I think if you have circumstantial evidence, like – you understand what I'm saying?

Like, it may be that she said it rained, right, but she didn't see it raining. And then she used the circumstantial evidence to show that it's raining.

I don't have a problem with that at all, right?

You can argue the inference, right?

That's not a problem.

But you can't argue that Ms. Dasia Hernandez saw [Appellant] with a gun and saw him murder the decedent.

Because . . . she technically said she saw him shoot somebody and kill him, right?

She didn't see that. That's very damning evidence, but she doesn't have personal knowledge of it. So I don't think that it's an excited utterance.

N.T., 11/7/18, at 3-8 (emphasis in original).

After consideration, we conclude that there was no abuse of discretion. The motions court thoroughly and thoughtfully reviewed Ms. Hernandez's 911 call and explained how, and for what purposes, the 911 call could be considered by the trial court sitting as the fact-finder. N.T., 11/7/18, at 3-8. The motions court also specified that the 483 would be permitted to impeach inaccurate statements. *Id.* at 4. Moreover, the motions court specified that this is a bench trial; it is presumed the trial court sitting as the fact-finder will disregard inadmissible or prejudicial evidence and consider only competent

evidence. N.T., 11/6/18, at 10-11; **Fears**, 836 A.2d at 71 n.19. In light of the foregoing, we conclude that there was no abuse of discretion in the motions court ruling or in the trial court considering the 911 call for the limited purpose described in this nonjury trial.

In his next issue on appeal, Appellant asserts that the motions court erred by denying his motion *in limine* to exclude evidence of the .45 caliber ammunition seized from his bedroom because the brand of ammunition recovered differed from the brand of .45 caliber ammunition that was recovered at the crime scene. Appellant claims this evidence was irrelevant and any probative value was outweighed by unfair prejudice. Appellant's Brief at 32.

As set forth above, we review the granting or denial of a motion *in limine* pursuant to an abuse-of-discretion standard. **Moser**, 999 A.2d at 605. The admission of evidence will not be disturbed on appeal unless that ruling reveals manifest unreasonableness, or partiality, prejudice, bias, ill-will, or such a lack of support as to be clearly erroneous. **Id.** The threshold inquiry with respect to the admission of evidence is whether the evidence is relevant. **Commonwealth v. Blauser**, 166 A.3d 428, 432 (Pa. Super. 2017); Pa.R.E. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Pa.R.E. 401. However, relevant evidence may be excluded "if its probative value is outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

On November 6, 2018, the motions court denied Appellant's motion *in limine* seeking to preclude the admission of the .45 caliber ammunition seized from Appellant's bedroom. N.T., 11/6/18, at 39. The motions court concluded that the recovery of the ammunition was admissible and explained:

> That one can come in. I think if it [had been] a different caliber, it would be a different argument, but the same caliber means it fit the same kind of gun. And I've seen many, many cases where people had various brands [of ammunition] in the same gun. So that [motion *in limine*] is going to be denied, and that's allowed to come in.

*Id.* Moreover, in its Pa.R.A.P. 1925(a) opinion, the trial court expounded as follows:

> [Appellant] … avers that this [c]ourt erred by denying his motion *in limine* to exclude evidence of unfired .45 caliber projectiles discovered in his residence during the detectives' December 29, 2016 search. The threshold inquiry for admission of evidence is the issue of relevance, and evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa. Super. 2013) (*citing Commonwealth v. Spiewak*, 617 A.2d 696, 699 (Pa. 1992)). Evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. *Commonwealth v. Hairston*, 84 A.3d 657, 664 (Pa. 2014); Pa.R.E. 403.

> The evidence that detectives recovered .45 caliber ammunition from [Appellant's] home is clearly relevant. While the murder weapon was not recovered in this case, the evidence presented proved that a .45 caliber firearm was used to kill the

decedent. Five .45 caliber [fired cartridge casings] were recovered from the scene of the crime and two .45 caliber projectiles were also recovered. N.T. 11/13/2018 at 154-155. Testimony that nine .45 caliber projectiles were discovered in [Appellant's] home was relevant to show that [Appellant] had ammunition for the type of weapon used in the murder. Such evidence would also permit the factfinder to infer that [Appellant] had access to a .45 caliber firearm like the one used in the murder. *See Commonwealth v. Broaster*, 863 A.2d 588, 692 (Pa. Super. 2004) (*citing Commonwealth v. Shoatz*, 366 A.2d 1216, 1225-26 (Pa. 1976) (evidence concerning the recovery of ammunition relevant as circumstance to identify defendant where ammunition corresponds to the type used in a homicide).

Trial Court Opinion, 4/4/19, at 7-8.

After review, we discern no abuse of discretion in the order denying Appellant's motion *in limine* with respect to the ammunition discovered in Appellant's bedroom. As the trial court noted, this evidence connected Appellant to a .45 caliber firearm. Trial Court Opinion, 4/4/19, at 8. Appellant's possession of .45 caliber ammunition, the same ammunition utilized to shoot and kill the decedent, was relevant to show that "the defendant owned or had access to an implement with which the crime could have been committed." **Commonwealth v. Akers**, 572 A.2d 746, 754 (Pa. Super. 1990) (quoting **Commonwealth v. Yount**, 314 A.2d 242, 249 n.8 (Pa. 1974)).

On cross-examination, Appellant's counsel correctly pointed out that although the caliber was the same, the brand of ammunition seized from Appellant's bedroom differed from that which was collected at the crime scene. N.T., 11/13/18, at 142. However, any uncertainty concerning the ammunition

and its connection to the crimes committed goes to the weight of the evidence. *See Commonwealth v. Natividad*, 773 A.2d 167, 176 (Pa. 2001) (circumstantial evidence connecting a gun to the appellant and the criminal acts at issue justified admission of the firearm into evidence; any uncertainty that this particular firearm was not the firearm used by appellant went to the weight of the evidence), *abrogated on other grounds*, *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003);[6] *see also Commonwealth v. Coccioletti*, 425 A.2d 387, 390 (Pa. 1981) ("The lack of proof that the weapon is the murder weapon goes to the weight of the evidence but not its admissibility."). For the foregoing reasons, we find no abuse of discretion and conclude that Appellant is entitled to no relief on this issue.

In his final issue, Appellant presents a challenge to the discretionary aspects of his sentence. Specifically, Appellant asserts that the trial court abused its discretion and imposed a manifestly excessive sentence, failed to consider certain factors such as Appellant's personal history, and fashioned a sentence in excess of what was necessary to address the gravity of the offense, the protection of the community, and Appellant's rehabilitative needs. Appellant's Brief at 45-46.

---

[6] The decision in *Freeman* abrogated the application of "capital case relaxed waiver doctrine" utilized in *Natividad* and other cases. *Freeman*, 827 A.2d at 400, 402-403.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original). Whether a particular issue constitutes a substantial question about the appropriateness of a sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

Herein, Appellant has met the first three requirements of the four-part test. Appellant filed a timely appeal, raised the challenge in a post-sentence motion, and included in his appellate brief the necessary statement of the

reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raised a substantial question.

In his Rule 2119(f) Statement, Appellant asserts that the trial court imposed a manifestly excessive sentence and failed to consider mitigating factors and the factors set forth in 42 Pa.C.S. § 9721(b). Appellant's Brief at 21-24. This claim presents a substantial question. *See **Commonwealth v. Caldwell***, 117 A.3d 763, 769-770 (Pa. Super. 2015) (*en banc*) (an assertion that a sentence is excessive, in conjunction with a claim that the trial court failed to consider mitigating factors, raises a substantial question); *see also **Commonwealth v. Swope***, 123 A.3d 333, 339-340 (Pa. Super. 2015) (stating that a claim a sentence is manifestly excessive, together with a claim that the sentencing court failed to consider the appellant's rehabilitative needs and mitigating factors in fashioning its sentence, presents a substantial question). Accordingly, we will review the merits of Appellant's challenge to the discretionary aspects of his sentence.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *Id.*

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference because the sentencing court is in the best position to view a defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted). When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Furthermore, when the sentencing court has the benefit of a pre-sentence investigation report, we presume that the court was aware of all relevant sentencing factors. *Commonwealth v. Knox*, 219 A.3d 186, 199 (Pa. Super. 2019) (citing *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009)).

As set forth above, the trial court sentenced Appellant to a term of twenty to forty years of imprisonment for third-degree murder, a consecutive term of five to ten years of imprisonment for VUFA 6105 (possession of a firearm by a prohibited person), and a concurrent term of ten to twenty years of imprisonment for robbery. Sentencing Order, 1/18/19. The trial court imposed no further penalty on the remaining convictions. *Id.* This resulted in an aggregate sentence of twenty-five to fifty years of imprisonment. *Id.* Our review of the record reflects that at the time of sentencing, the trial court was aware of the Sentencing Guidelines, reviewed all relevant and available information, balanced those considerations pursuant to 42 Pa.C.S. § 9721(b), and informed Appellant of the basis for the sentence. N.T., 1/18/19, at 2, 3-10. In its Pa.R.A.P. 1925(a) opinion, the trial court explained:

> This [c]ourt deferred sentencing for completion of pre-sentence and mental health reports. On the sentencing date, this [c]ourt explained to [Appellant] that it had reviewed those reports and information submitted by both the Commonwealth and [Appellant's] attorneys. N.T. 1/18/2019 at 2. During sentencing, this [c]ourt summarized [Appellant's] prior criminal history, which included thirteen arrests, seven convictions, and nine commitments, which eventually led to six violations of parole and two revocations of his sentence. N.T. 1/18/2019 at 4. This [c]ourt also recapitulated [Appellant's] then twenty[-]year criminal history, which contained a seemingly endless stream of drug and gun offenses. *Id.* at 4-10. Based on its review of these reports, this [c]ourt noted that [Appellant] obtained his GED while in juvenile placement and had been shot twenty-one times since 2012, which resulted in a diagnosis of post-traumatic stress in 2015. *Id.* at 6-7. This [c]ourt further considered [Appellant's] history of drug abuse and depression, which requires him to receive medication while incarcerated. *Id.* at 8-9. This [c]ourt noted that [Appellant] was intellectually gifted, and would receive

- 28 -

a sentence permitting him to interact with his children and grandchildren outside prison as an older man. *Id.* at 31-32.

This [c]ourt additionally heard victim impact testimony from the decedent's family, and [Appellant's] lengthy proclamation of his own innocence. Though [Appellant] maintained his innocence despite the strong evidence used to convict him, immediately before imposing sentence, this [c]ourt explained that it would not grant an additional sentence because [Appellant] protested his Conviction. *Id.* at 31. Rather, this [c]ourt told [Appellant] that he earned his sentence because of his criminal history and the behavior he demonstrated on the afternoon of the murder. This reasoning is adequate to support this [c]ourt's sentence. *Id.*

Ultimately, this [c]ourt imposed standard range sentences on his Third-Degree Murder, Robbery, and VUFA 6105[7] charges for a total sentence of twenty-five to fifty years of imprisonment, ten years less than the Commonwealth's recommendation, and well below the statutory maximum.

Trial Court Opinion, 4/4/19, at 14-15.

Upon review, we discern no abuse of discretion in the sentences imposed. The trial court set forth its considerations, explained the basis for the sentences, and considered the factors set forth in 42 Pa.C.S. § 9721(b). Accordingly, Appellant's contrary claim lacks merit.

_____

[7] Although the trial court correctly states that it imposed standard-range sentences for third-degree murder and robbery, the trial court did not sentence Appellant in the standard range of the Sentencing Guidelines on the VUFA-6105 conviction. Rather, it sentenced him below the standard range in the mitigated range. With an offense gravity score of ten and prior record score of "repeat felony 1 and felony 2 offender" ("RFEL"), a standard-range minimum sentence would have been between seventy-two and eighty-four months. N.T., 1/18/18, at 2; 204 Pa. Code § 303.16(a). Herein the trial court imposed a minimum term of only sixty months, which is in the mitigated range. 204 Pa. Code § 303.16(a).

For the reasons set forth above, we conclude that Appellant is entitled to no relief.  Therefore, we affirm the January 18, 2019 judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins this Memorandum.

Judge Strassburger files a Concurring Memorandum in which Judge Bowes joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/20