J-S50030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :       PENNSYLVANIA
  :
v.   :
  :
  :
  :
MALIK BLAND   :
  :
Appellant   :   No. 3244 EDA 2014

Appeal from the Judgment of Sentence February 18, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000030-2009

BEFORE:    BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:             **FILED MARCH 30, 2021**

Appellant, Malik Bland, appeals from the judgment of sentence entered on February 18, 2014,[1] in the Philadelphia County Court of Common Pleas. After review, we affirm.

The trial court summarized the facts of this case as follows:

> On May 14, 2008, shortly before 6:00 p.m., Amelia Lincoln ("Lincoln") was standing with her three year old son talking to Sokoni Meachum ("Meachum") on the porch of his house on the corner of 66th Street and Elmwood Avenue. A girl named Shameeka, who was wearing her high school uniform, walked up 66th Street from 6548 Theodore Street to the porch where Lincoln and Meachum were talking. She told them to put their hands up, and they began to laugh. Moments later, [Appellant] walked up to the porch and pulled out a 0.38 caliber revolver. Meachum pushed Lincoln and her son out of the way, and [Appellant] immediately shot Meacham five times in the chest. [Appellant] ran from the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The reasons for the delay in our disposition of this appeal are discussed *infra*.

scene, and Meachum was taken to University of Pennsylvania Hospital, where he was pronounced dead at approximately 8:30 p.m.

Trial Court Opinion, 6/30/15, at 3.

In a criminal information filed on January 9, 2009, the Commonwealth charged Appellant with murder, persons not to possess a firearm, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possessing an instrument of crime ("PIC").[2] Information, 1/9/09, at 1-2. The trial court set forth the procedural history as follows:

On January 30, 2014, [Appellant] filed a Motion to Suppress a photo array which was heard and denied on February 6, 2014. On February 6, 2014, [Appellant] elected to exercise his right to a jury trial and pled not guilty to the above listed charges. On February 18, 2014, the jury found [Appellant] guilty of Murder of the First Degree and PIC,[3] after which this court sentenced [Appellant] to the mandatory term of [l]ife imprisonment without parole on the murder charge. He received no further penalty on the PIC charge. On February 24, 2014, [Appellant] filed post-sentence motions, which were denied on June 25, 2014.

On October 14, 2014, [Appellant] filed a Petition to Reinstate Appellate Rights Nunc Pro Nunc, which this court granted on October 31, 2014. On November 14, 2014, this court received a Notice of Appeal and on January 7, 2015, upon completion of the notes of testimony, [Appellant] was served an Order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). …

---

[2] 18 Pa.C.S. §§ 2502, 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

[3] The record reveals that the charges of persons not to possess a firearm, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia, were *nol prossed*. Order, 2/18/14.

Trial Court Opinion, 6/30/15, at 1-2. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On September 1, 2015, Appellant filed a *pro se* "MOTION FOR LEAVE TO REOPEN AND TO EXTEND APPELLANT'S BRIEFING SCHEDULE AND TO WITHDRAW COUNSEL OF RECORD FROM APPELLANT'S CASE," in which Appellant requested, *inter alia*, the appointment of new counsel or to be permitted to represent himself on appeal. On September 22, 2015, our Court remanded this matter to the trial court to hold a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to determine if Appellant wanted to represent himself on appeal or proceed with court-appointed counsel. On January 29, 2016, the trial court responded to this Court's September 22, 2015 order. Therein, the trial court explained that it was unable to hold a **Grazier** hearing because Appellant was incarcerated in a federal prison in West Virginia, and the trial court could not authorize a video hearing. Letter, 1/29/16. In light of the trial court's response, this Court stayed Appellant's appeal pending a **Grazier** hearing. Order, 5/13/16. However, there was no activity in this matter for more than three years, and the appeal remained inactive.

In 2019, our Court coordinated with the Honorable Leon W. Tucker, the supervising judge of the Philadelphia County Court of Common Pleas Criminal Trial Division, in an effort to schedule a video hearing for Appellant. Letter, 2/21/19. At a video hearing held on March 25, 2019, Appellant informed the

trial court that he would prefer to appear in person. N.T., 3/25/19, at 7-9; Letter, 4/11/19. Appellant's hearing was ultimately held on March 9, 2020, and after the hearing, Judge Tucker advised this Court that Appellant's attorney, Lee Mandell, Esquire, would remain Appellant's attorney of record. Letter, 3/11/20. Thereafter, this Court issued a briefing schedule and directed that Appellant's brief was due on or before May 4, 2020. Order, 3/24/20. Appellant failed to file a timely brief, and on June 18, 2020, we filed an order directing Attorney Mandell to file Appellant's brief by July 17, 2020. Order, 6/18/20. Although it was late, Attorney Mandell filed Appellant's brief on July 23, 2020, and after this Court granted an extension, the Commonwealth filed a responsive brief on October 9, 2020. We now deem this appeal ripe for disposition.

On appeal, Appellant raises the following issues for this Court's consideration:

> I. Is [Appellant] entitled to an Arrest of Judgment on the charge of Murder where the evidence is insufficient to sustain the verdict?
>
> II. Is [Appellant] entitled to a new trial where, as here, the greater weight of the evidence does not support the verdict?
>
> III. Is [Appellant] entitled to a new trial as the result of [c]ourt error when the [c]ourt permitted impermissible questioning to be done of a witness and where the [c]ourt denied a subsequent request for mistrial?

Appellant's Brief at 3.

In his first issue, Appellant contends that there was insufficient evidence to convict him of first-degree murder. Appellant's Brief at 9-11. Our standard of review is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Woodard*, 129 A.3d 480, 489-490 (Pa. 2015) (internal citation and quotation marks omitted).

In order to sustain a conviction of first-degree murder, we must conclude that the evidence established beyond a reasonable doubt the three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). "An intentional killing is one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated action." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007); 18 Pa.C.S. § 2502(a), (d). The jury may infer the intent to kill based on the defendant's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Baker*, 201 A.3d 791, 795-796 (Pa. Super. 2018).

Appellant asserts that the Commonwealth failed to prove that he possessed the specific intent to kill the victim. Appellant's Brief at 10-11. Rather, Appellant contends that he "lost his cool" and reacted by opening fire. *Id.* at 11. Thus, although Appellant concedes that he shot and killed the victim, he avers it was not first-degree murder. *Id.* After review, we disagree.

The trial court addressed this issue as follows:

> On appeal, [Appellant] asserts that the evidence was insufficient to support his conviction for first degree murder. This court disagrees, having found the evidence to be more than sufficient to support the jury's verdict. At trial, the jury heard testimony from Amelia Lincoln, Nicole Bruce, Denise Moore, Deborah Morrison, Landrum Thompson, Donna Collins, numerous police officers and detectives, as well as the medical examiner, Dr. [Edwin] Lieberman. The testimony of eye-witness Amelia Lincoln established that, on the evening of May 14, 2008, [Appellant] walked up to Sokoni Meachum's porch, located on the corner of 66th Street and Elmwood Avenue, where Lincoln and Meachum were speaking. According to Ms. Lincoln, [Appellant] pulled out a gun, shot Meachum 5-6 times, and then ran away. Ms. Lincoln identified [Appellant] from a photo array provided by Detectives [Derrick] Venson and [Kevin] Judge on May 21, 2008 at her home.
>
> The testimony of witnesses Nicole Bruce and Donna Collins corroborated that of Ms. Lincoln with regard to the date, time, and location of the shooting. Their testimony also confirmed that Meachum had been shot and was lying on his porch. Ms. Bruce identified [Appellant] as the perpetrator in her July 12, 2008 statement to police. Although Ms. Bruce disavowed many of the averments made in her statement to police, her signed statement was properly admitted as evidence at trial through the testimony of Detective Venson. The statement was admissible for its truth as a prior inconsistent statement that was signed and adopted by the declarant.[21]
>
> ___
> [21] *See* Pa.R.E. 803.1(1)(b).

- 6 -

Ms. Moore's and Ms. Morrison's testimonies further established that, a few hours after the shooting, [Appellant] was intoxicated and admitted that he had "messed up bad."[22] The testimony of Ms. Moore established that, following the shooting, [Appellant] came to her house, was acting strange, and appeared to be under the influence of alcohol. Although Ms. Moore disavowed some of the averments made in her statements to police, her signed statements were properly admitted as evidence at trial through the testimony of Detective Venson. Each statement was admissible for its truth as a prior inconsistent statement that was signed and adopted by the declarant.[23] Additionally, Landrum Thompson testified that he and [Appellant] dealt drugs together and that when he saw [Appellant] in prison[, Appellant] told him that he had shot someone and stashed the 0.38 revolver in an empty lot where the two of them had previously kept guns. As part of a federal plea deal, Mr. Thompson testified that he led police to the location of the 0.38 revolver.

[22] N.T. 2/10/2014 at 137:2 and 201.4-7.

[23] *See* Pa.R.E. 803.1(1)(b).

Finally, the testimony of Officer [Guillermo] Torres, Officer [Gary] Guaraldo, and the firearms examiner, Officer John Cannon, confirmed that four bullets were recovered from the scene and the body of Meachum. Their testimony confirmed that all four bullets were 0.38 caliber and three of the four were fired from the same firearm. Additionally, Dr. Lieberman's testimony established that Meachum sustained five gunshot wounds to the chest, and one gunshot wound to his hand which most likely resulted from a bullet exiting one of his other wounds. His death was caused by his fatal gunshot wounds.

In consideration of the multiple eye-witness accounts, by individuals who knew [Appellant], establishing that [Appellant] traveled up 66th Street, shot Meachum, and then fled the scene on foot, in conjunction with the wounds inflicted on the victim, this court has found that the evidence supported the jury's finding that [Appellant] shot Meachum with the specific intent to kill and with malice. As such, this court, in viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, has determined that the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that [Appellant] was guilty of Murder of the First Degree.

Trial Court Opinion, 6/30/15, at 8-10.

We agree with the trial court. The testimony that the jury found credible established that Appellant walked slowly toward the victim, drew a gun, and fired five or six shots into the victim's chest at close range while looking the victim in the eyes. N.T. (Trial), 2/6/14, at 165-171. This testimony and the inferences drawn from Appellant's use of a deadly weapon on vital parts of the victim's body, **see Commonwealth v. Talbert**, 129 A.3d 536, 543 (Pa. Super. 2015) (concluding that inflicting gunshot wounds to a victim's chest constitutes use of a deadly weapon on a vital part of the body for purposes of first-degree murder), is sufficient to prove the specific intent to kill beyond a reasonable doubt, **Baker**, 201 A.3d at 795-796, and it supports the first-degree murder conviction. **Houser**, 18 A.3d at 1133. Appellant's challenge to the sufficiency of the evidence lacks merit.

In his second issue, Appellant asserts that he is entitled to a new trial because the verdict was against the weight of the evidence. Appellant's Brief at 12. Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be

overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

***Commonwealth v. Williams***, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations

omitted)). A trial court's determination that a verdict was not against the

weight of the evidence is "[o]ne of the least assailable reasons" for granting

or denying a new trial. ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 529

(Pa. Super. 2016) (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1055

(Pa. 2013)). A verdict is against the weight of the evidence where certain

facts are so clearly of greater weight that to ignore them or to give them equal

weight with all the facts is to deny justice. ***Commonwealth v. Lyons***, 833

A.2d 245, 258 (Pa. Super. 2003) (citation omitted). "[W]e do not reach the

underlying question of whether the verdict was, in fact, against the weight of

the evidence .... Instead, this Court determines whether the trial court abused

its discretion in reaching whatever decision it made on the motion." ***Williams***,

176 A.3d at 312.

Appellant avers that the "greater weight of the evidence amply

demonstrated that [Appellant] had not engaged in premeditation and had not

had the opportunity to form specific intent to kill." Appellant's Brief at 13.

After review, we conclude that Appellant failed to raise this issue before the

trial court, resulting in waiver.

It is well settled that in order to preserve a challenge to the weight of

the evidence, the defendant must raise the issue before the trial court at the

time of sentencing or in a timely post-sentence motion; the failure to do so results in wavier of the issue. **See Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (holding that the failure to raise a weight-of-the-evidence claim orally and on the record at the time of sentencing or in a post-sentence motion, results in waiver, even if trial court addresses the issue in its opinion); **see also** Pa.R.Crim.P. 607(A) (stating that challenges to the weight of the evidence must be raised with the trial court before sentencing or in a post-sentence motion); **see also** Pa.R.A.P. 302(a) (stating that issues not raised before the trial court are waived and cannot be raised for the first time on appeal).

Herein, although Appellant filed a timely post-sentence motion, he did not raise the issue that he now purports to present on appeal. In his post-sentence motion, Appellant submitted one issue:

> 1. The verdict was against the weight of the evidence. As a matter of law there was insufficient evidence to sustain the jury's verdict due to numerous inconsistencies in the testimony of the Commonwealth witnesses, thereby causing the jury to speculate and/or guess.

Post-Sentence Motion, 2/24/14.

It has long been the law in Pennsylvania that a boilerplate post-sentence motion merely stating that the verdict was against the weight of the evidence preserves no issue for appellate review unless the motion specifies in what way the verdict was against the weight of the evidence. **Commonwealth v. Holmes**, 461 A.2d 1268, 1270 (Pa. Super. 1983). Appellant's vague post-

sentence motion failed to allege what testimony was inconsistent or mention the specific-intent-to-kill element of the murder charge. Accordingly, Appellant's issue concerning the weight of the evidence is waived. ***Id.***

Even if we were to reach the issue, we would conclude that Appellant is entitled to no relief. The trial court addressed this issue as follows:

> On appeal, [Appellant] asserts that the verdict was against the weight of the evidence. This court similarly disagrees with this claim, having found the weight of the evidence to support the jury's verdict. … [T]he jury heard testimony from numerous eye-witnesses and was able to assess each of their credibility as a witness. Although Nicole Bruce and Denise Moore disavowed portions of their respective statements to police, the jury had the full opportunity to evaluate the substance of the statements as well as their testimony at trial in making the relevant factual determinations. Similarly, the jury heard testimony from Dr. Lieberman and the firearms examiner, which corroborated the eye-witnesses' collective account of the shootings, and the jury was able to assess their credibility. The jury verdict, reflecting the assessment of all of the evidence presented at trial, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, this court finds no merit in [Appellant's] challenge to the weight of the evidence presented at trial.

Trial Court Opinion, 6/30/15, at 11-12.

As discussed above, Ms. Lincoln testified that Appellant walked up to the victim, pulled out a firearm, and fired multiple gunshots into the victim's body. N.T. (Trial), 2/6/14, at 165-171. It was within the province of the jury to make credibility and weight-of-the evidence determinations, and the jury was free to believe all, part, or none of the evidence. ***Commonwealth v. Feese***, 79 A.3d 1101, 1122 (Pa. Super. 2013). As referenced by the trial court, Nicole Bruce disavowed a pretrial statement to police wherein she corroborated

- 11 -

Ms. Lincoln's testimony, identified Appellant as the shooter, and stated that she witnessed Appellant in possession of a handgun. N.T. (Trial), 2/10/14, at 23-68. Additionally, Denise Moore gave a statement in which she stated that Appellant, while smelling of alcohol and appearing intoxicated, admitted "doing something bad," and said to her "I messed up, I shot someone." *Id.* at 137-151. At trial, Ms. Moore denied making this statement. *Id.* at 151.

However, the jury remains free to determine credibility and weigh the evidence even in instances where a witness disavows a prior statement. *See Commonwealth v. Hanible*, 30 A.3d 426, 443 n.11 (Pa. 2011) ("[T]he jury was free to evaluate both [the witness's] statement to police as well as his testimony at trial recanting that statement, and free to believe all, part, or none of the evidence."). Thus, the jury was free to believe or disbelieve Ms. Lincoln, Ms. Bruce, and Ms. Moore. We note that as an appellate court we do not reweigh the evidence and substitute our judgment for that of the jury. *Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). Based on the caselaw and our review of the record, were we to reach this issue, we would conclude that there was no abuse of discretion in the trial court denying Appellant's challenge to the weight of the evidence.

Appellant's final issue concerns an evidentiary ruling by the trial court, and the trial court's denial of Appellant's motion for a mistrial. Appellant's Brief at 13. Appellant argues that the trial court abused its discretion when it permitted the Commonwealth to refer to a prior consistent statement on re-

direct examination. *Id.* at 14. Appellant further contends that the trial court erred in denying a mistrial on this basis. *Id.* at 15. After review, we disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa. Super. 2020). Additionally, when presented with a challenge to the denial of a motion for mistrial, we apply the following standard:

> A motion for mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of the motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003).

As stated, Appellant challenges the trial court overruling an objection to the Commonwealth's use of a prior consistent statement. Rule 613(c) of the Pennsylvania Rules of Evidence provides:

> **(c) Witness's Prior Consistent Statement to Rehabilitate.**
> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
>> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>>
>> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

This Court has explained:

[P]rior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two.

**Commonwealth v. Bond**, 190 A.3d 664, 668 (Pa. Super. 2018) (citations omitted).

The trial court addressed Appellant's averments as follows:

On appeal, [Appellant] asserts that this court erred in overruling the defense's objection to the Commonwealth's use of a prior consistent statement and subsequently denying the defense's request for a mistrial. This court disagrees. At trial, the Commonwealth presented the testimony of Amelia Lincoln, which referenced her identification of [Appellant] via statement to police shortly after the shooting as well as her failure to identify [Appellant] at the preliminary hearing. Ms. Lincoln's trial testimony during direct examination provided explanation for the failure to identify [Appellant] at the preliminary hearing, stating that she was young and scared.[16] During the cross-examination of Amelia Lincoln, counsel questioned Ms. Lincoln at length regarding her testimony at the preliminary hearing, emphasizing her repeated failure to identify [Appellant]. In response, over objection of the defense, the Commonwealth's reexamination of Ms. Lincoln referenced the statement she gave to detectives shortly after the shooting in order to rehabilitate her. This court found that the Commonwealth's use of the prior consistent statement did not go beyond the scope of the cross-examination because the Commonwealth sought to rebut the implication that Ms. Lincoln had made inconsistent statements at the preliminary hearing, which she attributed to being young and scared. The statement established that Ms. Lincoln knew [Appellant] from the

- 14 -

neighborhood and that he was not a person unfamiliar to her. Accordingly, the statement was used to show Ms. Lincoln's familiarity with [Appellant] and supported her explanation for repeatedly failing to identify [Appellant] at the preliminary hearing, on account of her fear of repercussions in her neighborhood. Having found the prior consistent statement to have been properly admitted at trial, this court found no support in the defense's request for a mistrial.

[16] N.T. 2/6/2014 at 185-186.

Trial Court Opinion, 6/30/15, at 5-7.

We agree with the trial court. Appellant's counsel cross-examined Ms. Lincoln concerning her testimony from the preliminary hearing, wherein she stated that Appellant was not the man who committed the murder. N.T. (Trial), 2/6/14, at 200-221; N.T. (Trial), 2/7/14, at 5-8. On redirect, the Commonwealth sought to rehabilitate Ms. Lincoln and show the jury that Ms. Lincoln did positively identify Appellant as the perpetrator shortly after the shooting in her statement to police. N.T. (Trial), 2/7/14, at 20-23. The Commonwealth's use of Ms. Lincoln's prior consistent statement was to rebut the implication that Ms. Lincoln testified untruthfully and was unfamiliar with Appellant. *Id.* at 20-30. Indeed, Ms. Lincoln's prior statement reflected that she knew Appellant from her neighborhood and positively identified Appellant as the shooter shortly after the victim's murder. *Id.* at 21-28. After review, we discern no abuse of discretion in the trial court's evidentiary ruling pursuant to Pa.R.E. 613(c) or in its denial of Appellant's motion for a mistrial. *Bond*, 190 A.3d at 668; *Tejeda*, 834 A.2d at 623.

- 15 -

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2021